## AMERICAN RY. EXPRESS CO. v. RAILROAD COMMISSION OF GEORGIA et al.

(District Court, N. D. Georgia, N. D.    August 15, 1921.)

1. **Carriers ⟨key⟩12(6½)—Order to carriers as to joint rates held not too uncertain to be enforceable.**

   An order by the state public utility commission to express companies to receive for each other for transportation within the state at all terminal or intermediate points of physical contact or connection of routes over railroad lines over which they have respectively established routes and to charge joint rates is not too uncertain to be enforced.

2. **Carriers ⟨key⟩12(6½)—Failure of notice to carrier by public utility commission of making joint rate makes rate invalid.**

   Where an express company filed a schedule containing joint rates with another, and the public utility commission changed provisions of the schedule as to joint rates, making them more extensive, in the absence of 30 days' notice to carriers, as provided by Code 1910, § 2630, the joint rates are invalid.

3. **Carriers ⟨key⟩12(1)—Public utility commission has no power to institute joint rates.**

   Where an express company filed a schedule of joint rates with another express company, a public utility commission may not, by striking out clauses of the schedule without notice or hearing, extend these joint rates, since to do so would amount to an institution of rates, while the utility commission is limited to a making of rates.

4. **Carriers ⟨key⟩12(6½)—When a public utility commission makes joint rates, it must make division between the carriers.**

   When a public utility commission makes joint rates, it must make division between carriers, and give the carriers an opportunity to be heard and contest the division, before requiring the service to be given.

5. **Carriers ⟨key⟩12(5)—Public utility commission, in making rates, is limited to just and reasonable rates.**

   In making joint rates between express companies, a public utility commission may not require one express company to make short hauls for a pro rata share of the joint rate, since to do so would be to require the carrier making the short haul to render service for an unjust and unreasonable rate.

In Equity.    Bill by the American Railway Express Company against the Railroad Commission of Georgia and Charles Murphy Candler and others, members of the Railroad Commission of Georgia.    Injunction granted, without prejudice to the commission to fix just and reasonable joint rates on due notice to the carriers affected thereby.

Robert C. & Philip H. Alston, of Atlanta, Ga., for complainant.
James K. Hines, of Atlanta, Ga., for defendants.

Before KING, Circuit Judge, and BEVERLY D. EVANS and SIBLEY, District Judges.

KING, Circuit Judge. · The American Railway Express Company (hereinafter styled American) is a corporation of Delaware, organized during the period of federal control, to which were transferred all of the properties of the Adams, American, Wells Fargo, and Southern Express Companies, then owning or controlling the entire express busi-

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ness of the United States. It continued to conduct such business as the agent of the ·Director General of Railroads until November 17, 1918, when the President, by proclamation, took over the American, and it was operated under government control during the period thereof.

On ·March 1, 1920, the American began operating on its own account. At that time it was the only express company doing business in Georgia. Prior to September. 1, 1920, the American was operating on practically all railroads in Georgia. It paid the railroads slightly more than 50 per cent. of gross receipts for their services. Under this division it had been and was losing money, and it proposed a new contract to the railroads, increasing its percentage. This contract was accepted by practically all railroads in the United States, except those composing the Southern Railway System.

The Southeastern Express Company (hereinafter styled the Southeastern) was organized through the agency of the Southern Railway Company and the Mobile & Ohio Railroad Company (controlled by the Southern Railway Company), and began business in the state of Georgia on May 1, 1921. The American has its lines on practically all railways in Georgia except those embraced in the Southern Railway System. The Southeastern has its lines on those of the Southern Railway System.

On August 30, 1920, the American filed with Railroad Commission of Georgia a schedule of tariffs entitled:

American Railway Express Company
In connection with

| | | |
|---|---|---|
| Canadian Express Company | Ex 5—No. 2. | P. A. No. 2. |
| Canadian National Express Company | Ex 5—No. .1. | P. A. No. 1. |
| Dominion Express Company | Ex 5—No. 18. | P. A. No. 3. |

Local and Joint Schedule of First and Second-Class Express Rates.

Just before May 1, 1921, the Southeastern filed with the Railroad Commission of Georgia its concurrence in the above schedule of rates. On April 28, 1921, the American filed a supplement to said tariff, effective May 1, 1921, containing the following:

"This tariff will apply from offices of the American Railway Express Company to offices of the American Railway Express Company, Canadian Express Company, Canadian National Express Company and Dominion Express Company; also from exclusive offices of the American Railway Express Company to exclusive offices of the Southeastern Express Company; also from exclusive offices of the Southeastern Express Company to exclusive offices of the American Railway Express Company, Canadian Express Company, Canadian National Express Company and Dominion Express Company; also from offices of the Southeastern Express Company to offices of the Southeastern Express Company.

"Routing.—Shipments destined to offices reached by both the American Railway Express Company and the Southeastern Express Company shall be forwarded by the Company receiving the same by shipment over its own lines to destination."

The entire purpose of this supplement was to specify the points between which joint rates with the Southeastern would be charged. Prior to the. filing of this supplement, no joint rates had been agreed on or fixed for business between the American and Southeastern.

On May 18, 1921, the American proposed the establishment of certain through routes for traffic between itself and the Southeastern in addition to the points indicated in said supplement of May 1st. On notification from the Southeastern that it would not accede to such proposal, the American prepared a supplement to former tariffs, indicating these and certain additional routes, and on May 31st filed the same with said Railroad Commission. No hearing by, or action of, the Commission thereon has been had.

Thereafter the American refused to accept shipments from the Southeastern on joint rates, except from and to exclusive points, as stated in said supplement of May 1st and over the through routes designated in said supplement of May 31st. It refused to accept other shipments except on local rates.

On June 24, 1921, without notice to the American or hearing, said Railroad Commission issued an order entitled "In re Numerous Complaints by Shippers, as to Express Services, Facilities, and Practices as to Intrastate Traffic within Georgia," which concluded as follows:

"It is therefore ordered, after consideration of all the foregoing, that the said two restrictive paragraphs in the special supplement filed with this Commission by the American Railway Express Company under date of April 28, 1921, to become effective on May 1, 1921, in so far as they relate to and affect intrastate traffic in Georgia, be and they are hereby disapproved, and the said company is hereby directed to file with this Commission within ten (10) days from this date an amended copy of said supplement with the said restrictive paragraphs as to the Southeastern Express Company stricken therefrom.

"It is further ordered, that the American Railway Express Company and the Southeastern Express Company, both now operating in the state of Georgia, be and they are hereby directed to receive from each other for transportation between points wholly within this state, at all terminal or intermediate points of physical contact or connection of routes or rail lines over which they have, respectively, established routes, all express matter duly tendered to each other, and forward the same with due regard to the interests of shippers and in accordance with the rules and regulations of this Commission hereinbefore quoted, this specific direction and order to become effective within three days from this date.

"By Order of the Railroad Commission of Georgia, this June 24, 1921."

This bill is filed to enjoin said order on the grounds: (1) That the order is too indefinite and uncertain to be enforceable; (2) that it is void because issued without notice, or hearing, or an opportunity to be heard, and is therefore in violation of the Constitution of the United States and of the state of Georgia, and the statutes of said state applicable thereto; (3) that it is void because it seeks to establish through routes and joint rates without statutory authority therefore; (4) that it is void because unjust and unreasonable.

[1] The order is not too uncertain to be enforceable. As conceded by both parties, it requires the receipt of express matter for transportation, not only over routes jointly established by the American and Southeastern, but these companies are ordered to receive such matter at all terminal or intermediate points of physical contact or connection of routes or rail lines over which they have *respectively* established routes, and, as emphasizing this, the American is required to strike the restrictive clauses of its tariff filed April 28, 1921, and refile its tariff

without such restrictions as applicable to the Southeastern. It is therefore to be assumed that the Commission intended to make the tariff applicable as a through tariff at all points of contact for business there tendered, though originating elsewhere.

[2, 3] The question therefore arises: Has this tariff been properly established, and is it a lawful exercise of power on the part of the Commission? That the Commission has no express power to establish through routes appears quite plain. Its power is confined to making through rates. This power is expressly limited by the proviso that, before applying the same to carriers, not under the control of the same company, they shall give 30 days' notice to such carriers of the joint rate contemplated and of its division between said carriers, and give a hearing to the carriers desiring to object to the same. Code of Georgia (1910) § 2630.

Take the illustration admitted by the counsel for the Commission to be quite possible under this order i. e., of a shipment from Atlanta to Forsyth, Ga., taken by the Southeastern at Atlanta. The tariff is based on the block distance by the direct route from Atlanta to Forsyth (about 75 miles). This route is via the American. The Southeastern would take it to Macon, approximately 90 miles, and deliver it to the American for transportation, 28 miles, to Forsyth. The Southeastern does not propose to pay the American its local rate for the 28 miles, but a pro rata of the rate based on the 75 miles or block distance from Atlanta to Forsyth; that being the rate stated in the tariff established by the Commission's order.

It is quite evident that no joint rates between the American and Southeastern existed when by its supplement of April 28, 1921, the American offered to institute such rates between exclusive offices of these respective companies as therein stated and proposed the additional lines named in the supplement of May 31, 1921. It will not do to say the Commission is not instituting joint rates by ordering the American to strike out the words which would offer a limited number of joint rates to the Southeastern and thus compel the American to greatly increase the joint rates so offered.

While the Commission would not be prevented by an approval of the proposed supplements from proceeding in the manner provided in Code, § 2630, to provide additional joint rates and the division thereof in cases where the public interest dictated such action, it cannot, by an order such as that of June 24, 1921, accept such joint rates as are there tendered, and by striking out the restrictive clauses, without notice or hearing, convert the proposed joint tariff into one of much wider 'scope.

[4] Not only has no joint rate been applied as between these carriers, on notice and opportunity for hearing to the American, but no divisions of such rate have been fixed. It is no reply to say that, if the carriers cannot agree, the Commission will then fix the division. The statute requires that the division be first fixed and the opportunity to be heard and contest the division be given, before the service is required. The order, therefore, is invalid for want of notice and hearing as required by the statute, and has not afforded due process of law.

[5] Again, the order, so far as it may require joint rates in instances like the foregoing, would be unreasonable. The power granted to the Commission is to fix *"just and reasonable* joint rates" and divisions thereof between connecting carriers, and is one to be exercised for the public interest. It never was intended to permit one carrier to short-haul another in the interest of its own business, unless a most decided case of promotion of the public service demanded it.

Where a carrier is furnishing reasonable facilities to the public, it cannot be required to open its exclusive business facilities to a competitor, or enter into joint arrangements with it to promote its business. We therefore think that in this case, if the Commission establishes joint rates between these carriers, it should designate the routes over which such rates are to apply and the division thereof in the light of the above principles.

The order of the Commission, so far as it attempts to create joint rates between said American and Southeastern Companies, is void as made without due notice or in accordance with the statute (Code, § 2630), and should be enjoined, without prejudice to the Commission to proceed under said statute to fix just and reasonable joint rates and apply the same and the divisions thereof, on due notice to the carriers affected thereby.