## AMERICAN RAILWAY EXPRESS CO. v. UNITED STATES et al.

(District Court, N. D. Georgia.   October 11, 1923.)

No. 245.

1. **Carriers ⬡⟹29—Order establishing additional through route not arbitrary or unreasonable, under the Interstate Commerce Act.**

An order establishing additional through routes for express matter is not arbitrary or unreasonable, because made avowedly to foster competition, under Interstate Commerce Act, § 15, par. 3 (Comp. St. § 8583[3]).

2. **Constitutional law ⬡⟹297—Order establishing through route for express matter held not to infringe guaranties of liberty and property.**

An order establishing additional through route over connecting express lines, under Interstate Commerce Act, § 15, par. 3 (Comp. St. § 8583[3]), did not infringe the constitutional guaranties of liberty and property, in giving shippers an election of routes which might deprive an express company of its long haul.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Carriers ☞29—Order under Interstate Commerce Act establishing through routes for express held invalid; "carrier by railroad."**

An order under Interstate Commerce Act, § 15, par. 3 (Comp. St. § 8583[3]), establishing additional through routes over connecting express lines, *held* to transgress the prohibition of paragraph 4, prohibiting Commission from requiring carrier by railroad to embrace in a route substantially less than the entire length of its railroad, etc.; the words "carrier by railroad" including an express company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carrier.]

4. **Carriers ☞29—Not improper to put route in operation without fixing division of rates.**

An order establishing an additional route over connecting express lines was not subject to objection, because it did not fix the division of rates· as between the express companies.

Bryan, Circuit Judge, dissenting.

In Equity. Suit by the American Railway Express Company against the United States of America and others, to enjoin enforcement of an order of the Interstate Commerce Commission. Interlocutory injunction granted.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for complainant.

P. J. Farrell and E. M. Reidy, both of Washington, D. C., for Interstate Commerce Commission.

Clint W. Hager, U. S. Atty., and C. P. Goree, Asst. U. S. Atty., both of Atlanta, Ga.

Charles J. Rixey, Jr., of Washington, D. C., and McDaniel & Neely, of Atlanta, Ga., for Southeastern Express Co.

Charles E. Cotterill, of Atlanta, Ga., for interveners.

Before BRYAN, Circuit Judge, and ERVIN and SIBLEY, District Judges.

SIBLEY, District Judge. American Railway Express Company seeks in this proceeding to enjoin the enforcement of an order of the Interstate Commerce Commission, granted at the instance of the Southeastern Express Company. That order requires the establishment of additional through routes between named regions north of Washington, served exclusively by the American Railway Express Company and certain points on the Southern Railroad south of Washington, with transfer at Washington, notwithstanding the existence already of reasonable through routes, and that shippers shall have the choice of routes. The proceedings are reported in 78 Interst. Com. Com'n R. 126, and 81 Interst. Com. Com'n R. 247. It is not contended that the existing through routes are discriminatory or unreasonable, but the purpose of the order is stated by the Commission to be:

"That there will be at least two reasonable direct routes between such points, one of which shall be via the transfer point selected by the Southeastern Express Company (Washington), and the other via the transfer point selected by the American Railway Express Company."

The transfer point selected by each company for each route is, of course, such as will give it the longest possible haul. The Commission

found that the competition between the two companies to get a favorable routing by shippers would result in better service, and that, for this reason, the additional routes ordered to be established were necessary and desirable in the public interest. The American Railway Express Company contends: (1) That under the order traffic originated by it in its exclusive territory north of Washington would be unnecessarily diverted from it at Washington to its competitor, thus depriving it, in many instances, of its long haul arbitrarily and unreasonably; (2) that thereby also it would be deprived of its liberty to contract and its property right in its business and the profitable conduct thereof, contrary to the Constitution; (3) that inasmuch as the additional through routes include less than the entire length of its lines between the respective termini, the order is contrary to paragraph 4 of section 15 of the Interstate Commerce Act (Comp. St. § 8583); (4) that, the division of the joint rate not having been fixed, the joint route cannot be lawfully required to be put into operation; (5) that the giving to the shipper absolute choice of routes is authorized by no statute, even though the establishment of the routes themselves be validly ordered.

[1] 1. By paragraph 3 of section 15 of the amended Interstate Commerce Act power is clearly given the Commission, either on complaint or on its own initiative, to establish through routes when deemed necessary or desirable in the public interest. When one sufficient through route already exists, there can be no necessity for another in the strictest sense, but certainly another may be desirable in the public interest. The competition between the carriers interested in the routes is generally considered to be itself in the public interest, because better service is likely to ensue. The repeal by the Act of June 18, 1910, of the proviso which formerly prevented the enforced duplication of routes shows the congressional intent that it should be allowed. We are not prepared to say the order is arbitrary or unreasonable, because made avowedly to foster competition.

[2] 2. Nor do we think the order infringes the constitutional guaranties to liberty and property in giving the shipper an election which may deprive the American Railway Express Company of its long haul. If otherwise valid, it is only a part of the system of regulation and rate-making to which public service companies consent, or at least subject themselves, when they enter the business. Such regulation, when done in the public interest and not arbitrarily, is not unconstitutional. Besides, it must be assumed that full justice will be done when the rate comes to be divided.

[3] 3. We think the order transgresses the prohibition of paragraph 4 of section 15 of the Interstate Commerce Act:

"In establishing any such through route, the Commission shall not (except as provided in section 3, and except where one of the carriers is a water line) require any *carrier by railroad*, without its consent, to embrace in such route substantially less than the entire length of *its railroad* and of any intermediate railroad *operated in conjunction and under a common management or control therewith*, which lies between the termini of such proposed through route, unless such *inclusion of [such] lines* would make the through route *unreasonably long* as compared with another practicable through route which could otherwise be established." (Italics always ours.)

293 F.—3

No water carriage is involved here. Section 3 is not sought to be applied, and the existing routes, which embrace all of the lines of the American Railway Express Company between the several termini involved, are not held by the Commission to be unreasonably long. The quoted provision is therefore transgressed if the words "carrier by railroad" include such an express company as the American, and if "its railroad" and "railroad operated in conjunction and under a common management" may be applied to its lines of transportation.

"Carrier by railroad" is a phrase much used by Congress in recent legislation. Its literal meaning is one who carries by means of a railroad—who *uses* a railroad in his carriage. It is opposed to carrier by any other means, such as "carrier by water," or by highway, or by air. There is no greater necessary implication of ownership of the railroad used by the one than of the sea, river, public road, or atmosphere used by the others. But the fact is that those who carry by means of railroads are so predominantly the railroad companies that they and they alone are generally in mind, and words used in legislation are apt best to fit them and their concerns. "Carrier by railroad" is an abbreviation evolved from the words of section 1 of the original Interstate Commerce Act (Comp. St. § 8563):

"Common * * * carriers engaged in the transportation of passengers or property wholly by railroad or partly by railroad and partly by water."

Because the act concerned itself so largely with things that railroad companies alone had and controlled, and with duties which they alone could perform, the Interstate Commerce Commission early held that only railroad companies were intended to be described, notwithstanding the acknowledged breadth of the language, and notwithstanding much of the legislation could and should be applied to express companies. In re Express Companies, 1 Interst. Com. Com'n R. 349. In other acts, such as the Safety Appliance Act of 1893 (27 Stat. 531 [Comp. St. §§ 8605–8612]) and of 1908 (35 Stat. 476 [Comp. St. §§ 8624–8629]), the Boiler Inspection Act of 1911 (36 Stat. 913 [Comp. St. §§ 8630–8639]), Railroad Arbitration Act of 1913 (38 Stat. 103 [Comp. St. §§ 8666–8676]), Hours of Service Act of 1907 (34 Stat. 1415 [Comp. St. §§ 8677–8680]), Reports of Accidents Act of 1910 (36 Stat. 350 [Comp. St. §§ 8642–8647]), and Employers' Liability Act of 1908 (35 Stat. 65 [Comp. St. §§ 8657–8665]), the same or similar words are used with application to such persons or things as pertain to railroad companies only. The Employers' Liability Act has been held not to apply to express companies, in view of the contents of the act, and the expression "common carriers by railroad" and its equivalents in this and other acts was said to refer only to carriers owning and operating railroads. Wells Fargo Co. v. Taylor, 254 U. S. 175, 187, 41 Sup. Ct. 93, 65 L. Ed. 205. It may even be conceded that such is now the common and prima facie meaning of the expression. But in none of these acts did Congress *define* the term "carrier."

In the case of the Interstate Commerce Act, Congress, by an amendment of June 29, 1906 (Comp. St. § 8563 et seq.), brought pipe line carriers under the act by the simple declaration that "the provisions of this act shall apply" to them. But, to bring express and sleeping car

companies within it, it proceeded to *define the term* "carrier" otherwise than it had been construed by the Commission. The enactment was that the term " 'common carrier' as used in this act *shall include* express companies and sleeping car companies." This was a legislative reversal of previous construction, whether by Commission, courts, or public. Effect must be given to it by making the term include those companies, wherever used in the act and its amendments. By so doing the words of the first section must read:

"Common carriers including express companies and sleeping car companies engaged in the transportation of passengers or property wholly by railroad," etc.

Thereby *such* express companies as carry property *by railroad*, and *such* sleeping car companies as carry passengers *by railroad*, and only such, are made subject to the act. The matter is followed up by broadening the definition of "railroad" to include, not only railroads owned or operated under any sort of contract, but "terminal facilities of every kind *used or necessary* in the transportation * * * or delivery of any such property," and of "transportation" to include the use "of cars and other vehicles and all instrumentalities and facilities of shipment or carriage *irrespective of ownership*, or of any contract, express or implied, for the *use* thereof, and all services in connection with * * * the handling of the property transported." These latter definitions were framed with a purpose of adapting the terms used in the act to the broadest possible application to the means of carriage employed by the various carriers of passengers and property now brought under the act, and to apply to them what had been specially ordained for railroad companies only. In this same act, in its amendment of section 6 (Comp. St. § 8569), is, so far as we can find, the first use by Congress of the short expression "carriers by railroad." It occurs in the requirement that:

"Carriers subject to the act [all of them] shall file and publish their rates from points on their own line to those on the lines of *other carriers by railroad, by water or by pipe line.*"

Very plainly all the carriers subject to the act are intended to be included in this threefold classification, and *"carriers by railroad"* includes not only railroad companies, but express and sleeping car companies, which use railroads in carriage. It was a short equivalent for the language of section 1, "Common * * * carriers engaged in the transportation of passengers or property * * * by railroad," and included what that included. Out of abundant caution, however, section 6 was made also to declare that " 'carrier' wherever used in this act shall mean common carrier."

The phrase "carrier by railroad" was introduced into paragraph 4 of section 15 by the Transportation Act of 1920 (41 Stat. 456, 485). It is used often in that act, but since, for the differing purposes of the act the term "carrier" is formally defined in no less than six different ways, some including, some excluding, express companies (see sections 204 [a], 209, 300, 400, 422, and 439), no help can be got from the portions of it other than that amending the Interstate Commerce Act, any more than from the numerous former acts in which it is not defined

at all. The amending portion of the Transportation Act rearranges, but retains, the definitions of the act of 1906, and in paragraph 4 of section 15 substitutes the words "carrier by railroad" for the word "company." The retention of "company" was not desirable, because it would exclude individuals, and would include carriers by water, pipe line, wire, or wireless, which was not intended. We feel constrained to hold that "carrier by railroad," by the dictionary of the act, means here just what it did when first used by the act of 1906, to wit, "common carrier including express and sleeping car company, which carries by railroad."

It must be admitted that there are portions of the act that cannot be *applied* to express and sleeping car companies, though they are "carriers by railroad" or "carriers subject to this act," as the case may be. Thus requirements as to passenger service cannot be applied to express companies because they do not carry passengers; nor can those as to freight be applied to sleeping car companies for like reason; nor can those relating to engines, switches, and tracks, or train operations, apply to either, because neither has them. But the use in paragraph 4 of section 15 of the expression "its railroad" or "railroad operated in conjunction with it" does not make such a case. The thing dealt with in paragraphs 3 and 4 of section 15 (which are to be construed together) is not one that touches the owner or operator of a railroad, and that could be answered for only by such an one. It touches the furnishing to the public of a through railroad transportation service, which the express company has and can answer for. So far as the public and this service are concerned, it matters not who owns or operates the railroad, or under what sort of an arrangement the express company obtains the use of it and its equipment.

As respects this service, the owner and operators of the railroads are the servants and employees of the express company. 6 Cyc. 369, note 37, and cases cited. So far as its patrons are concerned, the railroads used by the express company are in a substantial and legal sense "its railroads." Yet again, the definitions of "railroad" and "transportation" in the dictionary of the act are broad enough to cover all the facilities for carriage and delivery which the express company itself owns and operates, as well as its privilege of carriage over the railroad tracks, "irrespective of ownership or any contract express or implied for the use thereof." The case, indeed, is not one of ordinary construction, in which the reasonable intent of Congress is to be gathered from the context, but is rather one of executing a positive legislative mandate defining terms. The only question is whether the provision of the statute can have any reasonable application under these definitions, and we think it can. Since "carrier," wherever used in the act, means "common carrier," and since "common carrier," as used in this act, shall include express and sleeping car company," "carrier by railroad," in paragraph 4 of section 15, must be read "common carrier, including express and sleeping car company, by railroad." And, so read, the provision can reasonably be applied to an express company, and its transportation arrangements with and over railroads, referred to as "lines" in the end of the paragraph under discussion.

Leaving discussion of words, we are confirmed in this interpretation by considering the possible reasons which may have moved this enactment. The main purpose was, in substitution for the original prohibition against establishing another through route when one was already in existence, to extend protection to initial carriers by railroad against being compelled unnecessarily to "short haul themselves." Reasons which occur to us as perhaps moving thereto are:

(1) The natural justice in permitting one who initiates a thing to carry it forward and reap its benefits as far as possible. This has been recognized by the Commission in Dakota Junctions, 81 Interst. Com. Com'n R. 275, Western Mines, 66 Interst. Com. Com'n R. 108, and by this court in American Railway Express Co. v. Railroad Commission of Georgia (D. C.) 274 Fed. 649. This reason would apply as strongly to an express company as to a railroad company.

(2) The amendment of 1906 had imposed on the initial carrier responsibility for the whole carriage. It would seem right that it carry and control the shipment as far as possible—a reason applying with equal force to railroad and express companies.

(3) The uncertainty, delay, and risk of loss and damage incident to unnecessary transfers would apply equally to freight and express.

(4) The investment of the carrier on which it must make a return may differ in degree as between railroad and express companies, but not in substance. That the amount of investment itself was not controlling appears, in that a railroad which is merely *operated* is expressly protected equally with one *owned*. Many railroad companies merely run a train over the road of another, as in the case of trains running into Washington from Richmond, paying for the privilege no more, perhaps, than the express company pays for its transportation arrangements. We can think of nothing that can be said to differentiate an express company's "line" from a railroad company's "line," unless that of the express company is longer, usually covering many railroads. But, again, the length of the "line" is not made material, unless in comparison with the proposed new route it is unreasonably long.

[4] 4. The objection to the order, that it puts a route into operation without having first fixed the division of the rate, is unsustainable. The record shows a waiver of the matter. Furthermore, the prefixation is not required by the Interstate Commerce Act. Railway Co. v. United States, 43 Sup. Ct. 270, 67 L. Ed. 605, decided February 19, 1923. And lastly the division can often be more justly made after some trial of the new route.

5. Whether the shipper's choice of routes, when established, follows as a necessary consequence of the establishment of them, or whether the Commission has power, under paragraph 3 of section 15, to provide for it as one of the "terms and conditions" on which the route is to be used, or whether the power is to be considered as given by an application to express companies of paragraph 8 of section 15, we do not find it necessary to decide. Having concluded that the order before us is violative of paragraph 4 of section 15, it must be enjoined, irrespective of whether the new rates, if established, would open an insistence

on their use to the shipper or to the Southeastern Express Company. That one or the other, or both, should have the right to use them, must be true, or else the opening of them over the objection of the American Railway Express Company would be a quite idle performance.

An interlocutory injunction will be granted, but without prejudice to the right of the Commission to inquire whether, because the existing routes are unreasonably long, or for other cause particularly appearing, any of the proposed new routes can be established consistently with paragraph 4 of section 15 of the Interstate Commerce Act, and, if so, to order their establishment.

BRYAN, Circuit Judge (dissenting). During the war all express companies then existing were consolidated into the American Railway Express Company, which after the consolidation was the only express company in the country. It operated on all railroads from July 1, 1918, until May 1, 1921, when the Southeastern Express Company entered the field and began to do business over what is called the Southern Railway System, principally in territory south of the Ohio and Potomac rivers, and east of the Mississippi river, although it also operates over an electric railway line from Washington to Baltimore, and over the Maryland & Pennsylvania Railway Company from Baltimore to York, Pa. The territory selected by the Southeastern was promptly abandoned by the American. The Southeastern attempted to concur in the tariffs of the American, but the latter attempted to prevent this by supplements, by which it made applicable through routes and joint rates only between its exclusive offices and the exclusive offices of the Southeastern.

After hearings upon applications made by the Southeastern and certain shippers, for through routes between the two express companies, the Commission reviewed the proceedings before it in two opinions reported in 78 Interst. Com. Com'n R. 126, and in 81 Interst. Com. Com'n R. 247. Among other things, the Commission found that:

"Express shipments from a Southeastern exclusive point to an American exclusive point move over a through route at a joint rate. From an intermediate common point, a shipment over the same route is assessed the combination rate, which is higher. * * * Undue prejudice is said to result from the fact that between exclusive Southeastern points and exclusive American points through routes and joint rates apply, while between near-by common points and American exclusive points a shipper has access only to the American route in the absence of proportional rates, and from the fact that some common points are accorded joint routes to and from American exclusive offices and other common points are not."

And thereupon the Commission entered an order requiring the plaintiff company to establish and maintain—

"through routes between all points in the states of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, and Connecticut, New York, N. Y., and all points on the direct routes of the American Railway Express Company between New York and Washington, D. C., on the one hand, and all points on the main line of the Southern Railway Compay from Washington to and including Birmingham, Ala., on the other, with transfer between the American Express Company and the Southeastern Express Company at Washington, D. C."

The order further required that the new rates should not exceed the rates then existing, and that shippers should have the right to designate in writing over which through route shipments of express should be transported. The plaintiff contends that the order should be enjoined, because: (1) The Commission was without statutory authority to make it; (2) it is unjust and unreasonable, and is the taking of property without due process of law, in violation of the Fifth Amendment; and (3) a division of earnings is not prescribed.

1. The Interstate Commerce Commission did not have the power to establish through routes under the original Interstate Commerce Act of 1887; but by the amendatory Act of June 29, 1906, 34 Stat. 584, it was empowered to establish through routes and to prescribe the terms and conditions under which they should be operated—

"when that may be necessary to give effect to any provision of this act, and the carriers complained of have refused or neglected to voluntarily establish such through routes and joint rates, provided no reasonable or satisfactory through route exists."

The proviso was stricken out in 1910, at which time it was provided that:

"In establishing such through route, the Commission shall not require any company, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith which lies between the termini of such proposed through route, unless to do so would make such through route unreasonably long as compared with another practicable through route which could otherwise be established." 36 Stat. 552.

The establishment of through routes under the Act of 1910 was dependent upon the failure of the carriers to establish voluntarily such through routes, but in 1920 by Transportation Act, 15 (3), they were authorized to be established whenever necessary or desirable in the public interest. Limitation upon the right to establish through routes was not substantially changed, "except as provided in section 3," and except that for the word "company" in the act of 1910, the words "carrier by railroad," which the majority opinion holds includes express companies, were substituted in section 15 (4) of the Transportation Act of 1920, and the limitation was further made subject to cases of emergency.

The language, in the original act of 1887, "the provisions of this act shall apply to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used, under a common control, management, or arrangement" (24 Stat. 379), was early held by the Interstate Commerce Commission not to include express companies. Express Cases, 1 Interst. Com. Com'n R. 677. But it was provided in the act of 1906 that the term "common carrier" should include express companies, and they are clearly within section 15 (3) of the Transportation Act of 1920, where jurisdiction is given to the Commission to establish through routes "applicable to the transportation of passengers or property."

In the Transportation Act, the term "carriers by railroad" is usually employed to designate railroad companies. Section 1 (10, 11, 12, 13,

14, 21). Express companies, the Pullman Company, pipe lines, and telegraph and telephone companies are usually referred to as carriers or common carriers subject to the act. Sections 2, 4, 5, 6, 7, 8, 9, 10, 13. However, the terms by which the various carriers are intended to be designated are not always used. This should afford no occasion for surprise, since the act has been so often amended and the jurisdiction of the Commission has been enlarged by the use of general terms to include express companies and other common carriers, which were not originally subject to the act. It is said that, unless the term "carriers by railroad" be construed to include express companies, the jurisdiction of the Commission would be much curtailed, and especially as it exists by reason of sections 1 (16, 24), 6 (1), and in 3 (2). Section 1 (16) refers to routing traffic over other lines whenever any "carrier by railroad subject to this act is unable to transport it so as properly to serve the public." It will be noted that the language is made a little broader by including the words "subject to this act." But, if it means railroads only, it is not apparent that any important jurisdiction would be lost. Express traffic moves over railroad lines and the power is given to divert traffic if the railroad company is unable to handle it.

Section 6 (1) imposes the duty upon express companies, as well as other carriers, to publish schedules of rates. It is clear that it is the intention to make this requirement apply from points on the route of one carrier to points on the route of another carrier. In doing so the second named points are defined as being on the route of another carrier by railroad, by pipe line, or by water. It may be that the language was not happily chosen to define the points of destination, but the context clearly shows that express companies are included. There can be no destination points of express companies within the jurisdiction of the Commission which are not upon the route of a carrier by railroad or water, because every point on a route of an express company is also a point upon a route of a railroad company.

In construing section 1 (24), no difficulty is encountered in concluding that express companies are included within the language "any common carrier by railroad or water or otherwise." It will be noted that in section 3 (2) there is added to the usual designation, "carriers by railroad," the words "subject to the provisions of this act." It is at once apparent that the designation is different from that used in section 15 (4).

The plaintiff argues that shippers of express are given the right to designate the routing of it by section 15 (8), although the carrier there defined "is any railroad corporation, being a common carrier." If that be true, it only emphasizes the importance of considering the context in an effort to ascertain the meaning of the language used in any particular paragraph. The expression "any carrier by railroad" in section 15 (4) is limited and qualified by the language, "the entire length of its railroad and of any intermediate railroad operated in conjunction or under a common management therewith," etc.

But it is insisted that the limitation and qualification are intended to designate user, instead of ownership. That construction, as it appears to me, cannot possibly include "any intermediate railroad operated un-

der a common management or control" with the first-named railroad. What we are asked to do is to apply to an express company language which is descriptive only of a railroad company. Express companies as such do not have intermediate railroads upon a route under their management or control, separately or in connection with others. Section 15 (3) grants the power to establish through routes "applicable to the transportation of passengers or property," and therefore applicable to both railroad companies and express companies. But the limitation in 15 (4) applies only to railroad companies, as they usually, and not inadvertently, are referred to in the act, and further indicates that the term "carrier by railroad" is employed in the usual, and not in an exceptional, sense, by recognizing a common practice of consolidation of lines of railroads by railroad companies—a practice which never has been, and could not be, indulged in by express companies.

The liability of the initial carrier, whether railroad company or express company, for loss or damage to shipments, described in section 20 (11), is appealed to as a reason for including express companies along with railroad companies in section 15 (4), so as to enable such express companies to protect themselves, so far as possible, against liability due to the default of connecting carriers. It is not to be assumed that the Commission would establish through routes and compel the initial carrier to deliver either freight or express to a connecting carrier, which was unable to make good any loss caused by it.

Although it is conceded that a shipper of express has the right to route, yet the plaintiff contends, since such right did not exist at common law, it is not conferred by the act unless by section 15 (8). The Commission defends that part of its order allowing routing by shippers by a provision of section 15 (3), which authorizes it to prescribe the terms and conditions under which through routes may be operated, and also by special rule 3, providing for the routing of express by shippers, prescribed by it and acquiesced in by the plaintiff. When the act conferred upon the Commission the power to establish through routes, it thereby took away from the initial carrier the common-law right to select its connecting carriers. As stated by the Commission in its opinion, the establishment of through routes would be of no advantage if shippers could not make use of them.

Furthermore, I think it is clear from the act that express companies do not stand on the same footing as railroad companies. Formerly the several express companies operated in different parts of the country, and upon all the railroads in their respective territories. There was a semblance of competition between several of them in some parts of the country, but, because of their intercorporate relations, as pointed out by Commissioner Lane in the Express Cases, 24 Interst. Com. Com'n R. 379, there was little actual competition. The contract between the American Express Company and the railroad companies over whose lines it operates provides for a pooling of freights and a division of earnings, which is made unlawful, except by permission of the Interstate Commerce Commission, acting in the public interest (section 5 [1]), and can exist only under such rules and regulations and upon such terms and conditions as the Commission finds to be just and

reasonable (section 5 [2]). Such contract is also subject to any supplemental orders the Commission may deem necessary or appropriate. Section 5 (3). And the act specifically requires that within 30 days from its approval the plaintiff herein make application to the Commission for the consolidation which it now enjoys. Section 5 (7). It therefore seems to me that, in establishing through routes for express companies and in dealing generally with them, the Interstate Commerce Commission has practically unlimited power, including that to require routings by shippers to be complied with, provided always its acts are just and reasonable, and not arbitrary.

If express companies are included within the term "carriers by railroad" in section 15 (4), and therefore have a right to the long haul over the railroads with which they have contracts, then the American Railway Express Company, having such contracts with all railroad companies except the Southern, has it within its power to prevent competition by other express companies, and thus, to a considerable and dangerous extent, at least, to monopolize the express business of the entire country. The whole history of the Interstate Commerce Act, and of the many amendments to it, repels the idea that such a result was ever intended by the Congress.

2. It is to be conceded that the Interstate Commerce Commission cannot order an express company to do an unreasonable thing. It cannot arbitrarily establish a through route, and can only do so when it acts in the interest of the public. When it does so act, however, any damage incidental to the nature of the business of an express company does not render an order of the Commission unjust or unreasonable. I am unable to say that it is unjust or unreasonable to compel the American to deliver to the Southeastern express packages shipped from points north of Washington to points on the main line of the Southern Railway. The inequalities and discriminations which result from the present situation sufficiently appear from the reports of the Commission. The disadvantages which it is claimed by the American would result from a compliance with the Commission's order would be largely, if not completely, overcome by a proper division of rates.

3. The fact that the Commission did not prescribe the division of rates, but withheld that subject for further consideration, does not invalidate the order. The Commission deferred that matter until the question of its right to establish routes had been determined. This it had the right to do. Railway Co. v. United States, 43 Sup. Ct. 270, 67 L. Ed. 605, decided February 19, 1923.

I think the application for an interlocutory injunction should be denied.