UNITED STATES AND INTERSTATE COMMERCE COMMISSION *v.* AMERICAN RAILWAY EXPRESS COMPANY ET AL.

SOUTHEASTERN EXPRESS COMPANY *v.* AMERICAN RAILWAY EXPRESS COMPANY ET AL.

SOUTHERN TRAFFIC LEAGUE ET AL. *v.* AMERICAN RAILWAY EXPRESS COMPANY ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

Nos. 666–668. Argued April 16, 17, 1924.—Decided June 2, 1924.

1. Section 15, par. 4, of the amended Interstate Commerce Act provides that, in establishing any through route, the Commission shall not "require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route un-

reasonably long as compared with another practicable through route which could otherwise be established." *Held*, that an express company is not a " carrier by railroad " within the meaning of the paragraph. P. 430.

2. An appellee ·in support of the decree in his favor, may reassert grounds that were rejected by the court below, without taking a cross appeal. P. 435.

3. Under its power to establish through routes " whenever deemed by it necessary or desirable in the public interest " (Interstate Commerce Act, § 15, par. 3,) the Commission, for the sake of securing better service through competition, may reasonably require an express company to form joint routes with another express company between points already served by existing routes of the former over which delivery may be made as promptly as over the new routes. P. 436.

4. In such case, also, having the authority to fix " the terms and conditions under which such through routes shall be operated," (§ 15, par. 3, *supra*) the Commission reasonably may leave the direction of the routing to the shipper. P. 437.

5. A carrier has no absolute right to retain the traffic it originates for transportation to destination over its own line. *Id.*

293 Fed. 31, reversed.

APPEALS from a decree of the District Court temporarily enjoining enforcement of an order of the Interstate Commerce Commission establishing through routes for the American Railway and Southeastern Express Companies. The suit was brought by the former company. The Seaboard Air Line Railway intervened as plaintiff. The Commission, the other express company, the Southern Traffic League, and other shippers' associations, intervened as defendants.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

*Mr. Robert C. Alston* and *Mr. T. M. Cunningham, Jr.,* with whom *Mr. H. S. Marx* was on the briefs, for the American Railway Express Company, appellee.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Sanders McDaniel*, with whom *Mr. Charles J. Rixey* was on the brief, for the Southeastern Express Company, appellant.

*Mr. Hollins N. Randolph* and *Mr. Robert S. Parker* filed a brief on behalf of the Seaboard Air Line Railway Company, appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Transportation Act, 1920, c. 91, § 418, 41 Stat. 456, 485, amending Interstate Commerce Act, § 15, par. 3, directs that the Commission " shall whenever deemed by it to be necessary or desirable in the public interest   .   .   . establish through routes." Paragraph 4 of that section provides: " In establishing any such through route the Commission shall not   .   .   . require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established." That is, the Commission shall not compel the carrier to short haul its traffic. The main question for decision is whether the American Railway Express Company, which uses the railroads for its transportation service as described in *Wells Fargo & Co. v. Taylor,* 254 U. S. 175, 177, 178, is itself a " carrier by railroad " within the meaning of paragraph 4.

The American was organized, in June, 1918, as a war measure, to take over the express business done on the railroads which had come under federal control. After the Government relinquished such control, this consolidation of the transportation business and property of the express companies was approved by the Commission, under paragraph 7 of § 5 of the Interstate Commerce Act as amended by Transportation Act, 1920. *Consolidation of Express Companies,* 59 I. C. C. 459. Uniform contracts were entered into by the American with substantially all the railroads of the United States, *Express Contract, 1920,* 59 I. C. C. 518; and it enjoyed a practical monopoly of the railroad express business until May 1, 1921. On that day the Southeastern Express Company entered the field, by utilizing for that purpose the Southern Railway system and affiliated lines, in all about 10,000 miles of railroad. Many cities and towns in the southeastern States are now served both by the American and by the Southeastern. These are called common points. A larger number in those States are served only by one of the companies. These are called exclusive points. Except in the southeastern States, practically all railroad express offices in the United States are exclusive points of the American.

The Southeastern sought to have the American agree with it to establish through routes and joint rates between all points served by them respectively, whether common points or exclusive; and to permit the shipper to give the routing instruction. The American declined to do this; limiting its concurrence to routes between the exclusive points of one company and the exclusive points of the other. In this way, it attempted to secure to itself either the entire haul or the longest possible haul. Thereupon, the Southeastern instituted, before the Commission, proceedings against the American, praying that the Commission establish the through routes and joint rates sought. Another proceeding, seeking in part like relief, was brought against the two express companies by ship-

pers' associations. The cases were consolidated. The Commission ordered the establishment of some of the through routes prayed for,[1] finding that, in order to secure adequate service, it was necessary and desirable in the public interest that competitive joint routes be established, although the American had reasonable routes from origin to destination, or from origin to a point nearer destination than the joint through routes established.

---

[1] The Commission found " that it is necessary and desirable in the public interest that additional reasonable direct through routes and joint rates shall be maintained between points on the lines of the American Railway Express Company and points on the lines of the Southeastern Express Company, regardless of the fact that one company may have a reasonable direct single-line route, or join in a reasonable direct joint route via another junction which allows it a longer haul; that the rates between any two points shall be the same regardless of the route over which the shipment may move or the number of lines over which it may travel; that joint through routes shall be established, in instances where they will result in reasonable direct routes, so that there will be at least two reasonable direct routes between such points, one of which shall be via the transfer point selected by the Southeastern Express Company, and the other via the transfer point selected by the American Railway Express Company; and that the tariffs shall provide for the right of the shipper to designate the routing of express shipments over the routes established. . . ."  See 78 I. C. C. 126, 143.

The order (81 I. C. C. 247) required the companies to establish, on or before October 20, 1923, through routes between all points in the States of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, and New York, N. Y., and all points on the direct routes of the American Railway Express Co. between New York and Washington, D. C., on the one hand, and all points on the main line of the Southern Railway Co. from Washington to and including Birmingham, Ala., on the other, with transfer between the companies at Washington, D. C.; that the rates between these points shall not exceed the rates contemporaneously in effect between the same points over the routes now used; and that the tariffs should provide for the right of the shipper to designate in writing the routing of shipments over the routes prescribed. No order was made fixing divisions of the joint rates.

*Southeastern Express Co.* v. *American Ry. Express Co.,*
78 I. C. C. 126; 81 I. C. C. 247.

Before the effective date of the order, this suit to en-
join its enforcement was brought by the American against
the United States in the federal court for northern
Georgia. The Seaboard Air Line Railway, one of the
many railroads with which the American has a contract,
intervened as plaintiff. The Commission, the Southeast-
ern, the Southern Traffic League and other shippers'
associations intervened as defendants. The case was
heard on application for a temporary injunction by three
judges, pursuant to the Act of October 22, 1913, c. 32, 38
Stat. 208, 219, 220; the order was held void on the
ground that the American is a " carrier by railroad "
within the meaning of paragraph 4, and that, therefore,
the Commission was, on the facts found, without power
to make the order; and a temporary injunction [2] was
granted, Circuit Judge Bryan dissenting. 293 Fed. 31.
The case is here on separate appeals from that decision
by the several respondents. The three appeals present
the same questions of law.

*First.* The power to establish through routes is con-
ferred broadly as to all carriers by paragraph 3 of § 15.[3]
The limitation upon the power in respect to a " carrier
by railroad " is imposed by paragraph 4. The language

---

[2] The opinion stated that the injunction would be " without preju-
dice to the right of the Commission to enquire whether, because the
existing routes are unreasonably long, or for other cause particularly
appearing, any of the proposed new routes can be established con-
sistently with paragraph 4 of section 15 of the Interstate Commerce
Act, and, if so, to order their establishment." 293 Fed. 31, 38.

[3] The Act to Regulate Commerce, of February 4, 1887, c. 104, 24
Stat. 379, did not confer upon the Commission any power to estab-
lish through routes. Compare *Southern Pacific Co.* v. *Interstate
Commerce Commission,* 200 U. S. 536, 553. The amendment of
June 29, 1906, c. 3591, § 4, 34 Stat. 584, 590, conferred power to do
so " when that may be necessary to give effect to any provision of
this Act, and the carriers complained of have refused or neglected

which embodies this limitation is not appropriate to describe the situation of an express company. It is that the Commission may not compel the carrier to embrace in the through route " substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless . . ." An express company has no railroad. It is served by many railroads, as it is served by water lines, by motor trucks and by horses and wagons. Moreover, the language of

---

to voluntarily establish such through routes and joint rates, provided no reasonable or satisfactory through route exists." The amendment of June 18, 1910, c. 309, § 12, 36 Stat. 539, 552, struck out the proviso and substituted therefor the limitation now re-enacted in paragraph 4 of § 15 of the Interstate Commerce Act as amended by Transportation Act, 1920. The latter act struck out, also, the clause in the Act of 1910 by which the Commission's power to establish the through routes was dependent upon failure of the carriers to establish them voluntarily.

Section 1, par. 3, provides that " the term ' common carrier ' as used in this Act shall include all pipe-line companies; telegraph, telephone, and cable companies operating by wire or wireless; express companies; sleeping-car companies, etc." Section 1, par. 4, imposes upon every carrier of property the duty to establish through routes. Section 15, par. 1, (which deals, among other things, with joint rates) confers the regulatory powers in respect to " any common carrier or carriers subject to this Act for the transportation of persons or property or for the transmission of messages as defined in the first section of this Act." Paragraph 2, of § 15, deals only with the time when the orders under par. 1 take effect. Paragraph 3 contains no words limiting the scope of the Commission's power to establish through routes to " carriers by railroad." The limitation imposed, as applied to " carriers by railroad," appears first in par. 4. Prior to Transportation Act, 1920, the existence of the unrestricted power to establish through routes and joint rates appears to have been assumed without question by the Commission in *In re Express Rates, etc.*, 24 I. C. C. 380, 392–4; 28 I. C. C. 131, 136. Compare *American Express Co.* v. *United States*, 212 U. S. 522, 531, 534.

paragraph 4 describes aptly a single railroad system, but
not a system of express routes extending over many sepa-
rate railroad systems. Practically every express company
has had, as the American has now, routes over many sepa-
rate railroad systems.[4] However numerous the railroads
used, all the routes are parts of a single express system.[5]
If an express company is a "carrier by railroad," the
"entire length of its railroad" must, as the American
argues, be construed to mean the entire length of all the
lines of the railroads within the United States over which
it has routes. Such a construction would, if adopted,
tend to give permanency to an existing monopoly al-
though it failed to give adequate service. For it would
deprive the Commission of power to foster the competi-
tion found necessary to secure such service. There is
nothing in Transportation Act, 1920, which evinces an
intention on the part of Congress to accomplish such a
purpose.

The natural meaning of the term "carrier by railroad"
is one who operates a railroad, not one whose shipments
are carried by a railroad. The term is not found in the
original Act to Regulate Commerce which was applicable
only to carriers "engaged in the transportation of pas-

---

[4] In 1911 there were 13 express companies of which the 10 im-
portant ones conducted their service over 218,013 miles of railway,
18,385 miles of steamship and stage lines, and 6,665 miles of electric
lines. *In re Express Rates, etc.*, 24 I. C. C. 380, 384; 28 I. C. C.
131; 35 I. C. C. 3; *Proposed Increase in Express Rates*, 50 I. C. C.
385, 391. January 1, 1918, there were only 7 such express companies
in the United States. *Consolidation of Express Companies*, 59
I. C. C. 459, 460. Compare *Express Rates*, 1922, 83 I. C. C. 606, 622.

[5] The American, which was the only express company doing busi-
ness over the railroads when Transportation Act, 1920, was enacted,
conducted its service over nearly all of the 235,234 miles of railroad
of the first class in the United States. These were operated by 186
separate railroad companies. "Statistics of Railways of the United
States" for 1920, p. x, (Interstate Commerce Commission); *Con-
solidation of Express Companies*, 59 I. C. C. 459, 460.

sengers or property wholly by railroad, or partly by
railroad and partly by water." [6]   When the amendment
of 1906 extended the Commission's jurisdiction to ex-
press companies, sleeping car companies and pipe lines,
and that of 1910 extended its jurisdiction to telegraph,
telephone and cable companies, occasion for differentiat-
ing between carriers arose; as some of the provisions of
the Act to Regulate Commerce were obviously not appli-
cable to all the classes of carriers which had been made
subject to regulation.   But to what extent its provisions
should be applied to any class was left, by those amend-
ments, largely to construction.   In Transportation Act,
1920, the phrase " carrier by railroad " seems to have
been systematically employed to designate sections of
the Interstate Commerce Act which apply only to car-
riers operating railroads. [7]   The term was introduced by

---

[6] See § 1. The phrase used in all later sections of the original act
is " any common carrier subject to the provisions of this act."
See §§ 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 20.   Compare § 22.
The Commission held in *In re Express Companies,* 1 I. C. C. 349, that
while express business conducted as a department of a railroad
was subject to the original act, such business when conducted by
an independent company, which had acquired rights by contract
with the railroad, was not subject to the act.   Nor is the term
" carrier by railroad " found in the amendments of March 2, 1889,
c. 382, 25 Stat. 855; of February 10, 1891, c. 128, 26 Stat. 743;
or of February 19, 1903, c. 708, 32 Stat. 847.   In the amendment
of 1906, it appears in § 2 (34 Stat. p. 586); and in the amendment
of 1910, it appears in §§ 8 and 9 (36 Stat. p. 548).   But in con-
nection with the establishment of through routes, the use of the
term " carrier by railroad " appears for the first time in the amend-
ment made by Transportation Act, 1920.

[7] See following provisions of Interstate Commerce Act as amended
by Transportation Act, 1920, Title IV; § 1, pars. 10, 11, 12, 13,
14, 16, 17, 18, 20, 21, as compared with pars. 3, 4 and 6; § 3,
par. 2, as compared with pars. 1 and 3; § 4, par. 2, as compared with
par. 1; § 5, par. 6, as compared with par. 7 (also, 1 and 2); § 15,
par. 4, as compared with pars. 1, 3, 6, 7, 11; § 15a; § 20a; § 25,
pars. 2 and 4; § 26.   See also § 204(a), 209(a), 210(a), 300(1).

it in paragraph 4 in place of the word " company " which had been used in the amendment of 1910.[8] The purpose of the substitution was to make it clearer that the prohibition against compelling a carrier to short-haul its traffic was limited to railroads. The same phrase had been adopted in the Federal Employers' Liability Act of April 22, 1908, c. 149, §§ 1, 2, and 3, 35 Stat. 65, 66.[9] As used in that act, it was held in *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 187, 188, not to include independent express companies doing business over railroads. In § 15(4) of Transportation Act, 1920, it should be given the same meaning. Compare *United States ex rel. Chicago, New York & Boston Refrigerator Co.* v. *Interstate Commerce Commission, ante,* 292.

*Second.* The American claims that the order is void, even if the limitation contained in paragraph 4 is not applicable to express companies. One contention is that the order exceeds the power conferred upon the Commission, because it is, as a matter of law, unreasonable to establish a second through route merely for the sake of securing

---

[8] Section 15, as amended by the Act of June 18, 1910, c. 309, 36 Stat. 539, read: " The Commission shall not require any company, without its consent, to embrace in such route substantially less than the entire length of its railroad, etc."

[9] The phrase had been introduced in the Safety Appliance Act of March 2, 1903, c. 976, § 1, 32 Stat. 943; but it was not found in the original Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531; nor in the amendment thereof of April 14, 1910, c. 160, 36 Stat. 298. The term is used in the Hours of Service Act, March 4, 1907, c. 2939, 34 Stat. 1415; the Ash-Pan Act, May 30, 1908, c. 225, § 2, 35 Stat. 476; and the Boiler Inspection Act, February 17, 1911, c. 103, 36 Stat. 913. On the other hand, the 28 Hour Law, June 29, 1906, c. 3594, 34 Stat. 607, enumerates " railroad, express company, car company, common carrier other than by water." The Railway Mail Service Pay Provision, July 28, 1916, c. 261, § 5, 39 Stat. 412, 429, employs the phrase " railway common carriers "; and the Merchant Marine Act, June 5, 1920, c. 250, § 8, 41 Stat. 988, 992, the phrase " carrier by rail."

competition in service.   Another contention is that the
order exceeds the power conferred upon the Commission
because it purports to authorize the shipper to give rout-
ing instructions.   The further claim is made that the
American has, as a matter of law, the right to carry, over
its own lines, traffic which it originates, as long as this
can be done without unreasonably delaying the delivery
at destination; that this right to haul its traffic to desti-
nation is property protected by the Fifth Amendment;
that to authorize the shipper to give routing instructions
takes this property; and that the provision for making
an equitable division of the joint rate does not afford the
legal compensation for the taking to which it is entitled.

The Southeastern insists that these claims, although
adequately presented in the bill of complaint, cannot be
availed of in this Court, because they were overruled by
the District Court and the American did not take a cross-
appeal.   The objection is unsound.   It is true that a party
who does not appeal from a final decree of the trial court
cannot be heard in opposition thereto when the case is
brought here by the appeal of the adverse party.   In other
words, the appellee may not attack the decree with a
view either to enlarging his own rights thereunder or of
lessening the rights of his adversary, whether what he
seeks is to correct an error or to supplement the decree
with respect to a matter not dealt with below.   But it is
likewise settled that the appellee may, without taking a
cross-appeal, urge in support of a decree any matter ap-
pearing in the record, although his argument may involve
an attack upon the reasoning of the lower court or an
insistence upon matter overlooked or ignored by it.[10]   By
the claims now in question, the American does not attack,

---

[10] *The William Bagaley,* 5 Wall. 377, 412; " *The Stephen Morgan,*"
94 U. S. 599; *Landram* v. *Jordan,* 203 U. S. 56, 62.   Compare *Union
Tool Co.* v. *Wilson,* 259 U. S. 107, 111.

in any respect, the decree entered below.[11]    It merely
asserts additional grounds why the decree should be af-
firmed.    These grounds will be examined.

The competitive route ordered must, of course, be rea-
sonable in character from the standpoint of transporta-
tion; and there must be reasonable cause for establishing
it.   In this case, no objection is made to the character of
the routes ordered.   The objection is that, as a matter of
law, the competitive routes cannot be justified because the
time required for delivery over the existing routes of the
American is as short as it would be under the competitive
joint routes.   To this objection the action taken by Con-
gress supplies an answer.   Under the Act of 1906, the
Commission could act only if no " reasonable or satisfac-
tory through route exists."   In *Interstate Commerce
Commission* v. *Northern Pacific Ry. Co.*, 216 U. S. 538,
this Court set aside an order to establish a second through
route because it deemed the existing one adequate.   There-
upon, Congress, by the Amendment of 1910, struck out
the proviso and empowered the Commission to establish
through routes " whenever deemed by it to be necessary
or desirable in the public interest."   In transportation, the
quality of the service furnished may be as important to
the shipper as the rate.   The Commission found, in the
proceeding under review, that the service of the American,
in some instances, had been inadequate; and that in
" considering competition, time is not the only important
element.   Competition tends to make each company im-
prove its general treatment of the public, its practices,

---

[11] The decision in *Peoria & Pekin Union Ry. Co.* v. *United States*,
263 U. S. 528, 536, upon which the appellants rely, rests upon the
peculiar character of the question raised.   There the objection upon
which the appellee relied was one of venue.   The District Court
overruled it; and then dismissed the bill on the merits.   An objection
to venue can be waived at any stage of the proceeding.   This Court
held that it was waived by failure to take a cross-appeal.

rules, and regulations in regard to its methods of doing business." It found, also, that the " service at common points has improved since the formation of the Southeastern." Its conclusion, that the establishment of the competitive routes was necessary and desirable in the public interest, is not shown to have been unreasonable.

The existence of a competitive route ordinarily implies an option in the shipper. To give him the privilege of directing the routing is a corollary of the establishment of competitive routes. Upon shippers of railroad freight this right was expressly conferred by Congress, in paragraph 8 of § 15, subject only " to such reasonable exceptions and regulations " as the Commission may prescribe. The rights, in this respect, of shippers by express, were not dealt with in terms. The matter was, therefore, left subject to regulation by the Commission under general provisions of the act. Paragraph 3, which empowers the Commission to establish through routes, authorizes it, also, to fix " the terms and conditions under which such through routes shall be operated." Its order that the shipper by express may direct the routing is not unreasonable.[12] As the American has no absolute right to retain traffic which it originates, and as the provision authorizing the shipper to direct the routing is reasonable,

---

[12].Rule 3 of the express classification, approved by the Commission, provided that the shippers " by designation in writing may route shipments by way of such established routes and transfer points as they may desire." See *In re Express Rates, etc.,* 24 I. C. C. 380, 392, 405; 28 I. C.. C. 131. The Commission found that " the American refuses to obey shipper's routing instructions, and disregards rule 3 of the express classification." See *Southeastern Express Co.* v. *American Ry. Express Co.,* 78 I. C. C. 126, 140. The statements and practice of the Commission in the cases relied upon by the American are entirely consistent with this rule. See Annual Report, for 1909, p. 7. Also *Cincinnati & Columbus Traction Co.* v. *Baltimore & Ohio Southwestern R. R. Co.,* 20 I. C. C. 486, 490; *In re Express Rates, etc.,* 24 I. C. C. 380, 411.

the order does not violate any of its constitutional rights. We have no occasion to consider any of the other grounds urged in its support.

*Reversed.*