James L. OSBORN, Jr., Appellant,

v.

E.F. HUTTON & COMPANY, INC., Merrill Lynch, Pierce, Fenner & Smith Inc., Appellees.

No. 87–2392.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1988.

Decided Aug. 5, 1988.

Matthew J. Stretz, Kansas City, Mo., for appellant.

Danniel M. Dibble, Kansas City, Mo., for Hutton.

Lynne C. Kaiser, Kansas City, Mo., for Merrill Lynch.

Before ARNOLD, Circuit Judge, ROSS and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge. .

James L. Osborn, Jr. appeals from two orders of the district court granting the appellees' motions for summary judgment and dismissing each of Osborn's claims alleging that the appellees churned his commodities and fraudulently, negligently, or in breach of fiduciary duty gave him improper trading advice. We affirm.

Osborn is a successful entrepreneur, having founded in 1970 Home Office Reference Laboratory (Home Office), a company which tests human specimens for life insurance purposes. After the success of Home Office, Osborn began investing in various other companies and in 1975 opened his first commodities account. From 1975 until June, 1983 Osborn opened commodities accounts at several brokerage houses including appellees E.F. Hutton & Company, Inc. and Merrill Lynch, Pierce, Fenner & Smith, Inc.

Osborn's income tax returns from 1975 to 1980 show losses in commodities trading ranging from a few thousand dollars to $35,000.00, and gains ranging from $18,121.00 to $57,000.00. In 1981 Osborn sustained losses at Paine Webber, Merrill Lynch and E.F. Hutton in excess of $196,000.00. In 1982 Osborn lost $59,340.00 at Merrill Lynch, and realized a net gain of $22,838.00 in certain commodities and a net loss of $4,817.00 in others at E.F. Hutton. Osborn alleges that in 1983 he lost $916,017.93 at Merrill Lynch and $1,110,180.37 at E.F. Hutton.

Most of the commodities decisions between 1980 and 1982 were made by both Osborn and his brokers. Osborn talked at least once a day with his brokers and was sent "dailies," confirmation slips and monthly statements so that he could keep abreast of his positions. In addition, Osborn kept a quotron machine supplied by Merrill Lynch in his office permitting him to check current commodity prices.

Osborn stated in his deposition that he generally compared the advice of E.F. Hut-

ton and Merrill Lynch and would not execute a trade if either had a firm opinion against it. Osborn also stated that although he relied upon the advice of brokers in approximately ninety per cent of his trades, he knew he had the ultimate authority to say no. In this connection, Osborn further stated that some of his losses may have resulted from his own decisions. Although Osborn could not identify any such trades, he stated that on occasion the appellees acted without his consent.

After his substantial losses in 1983, Osborn commenced this action. Notably, however, he was unable to specify any allegedly improper trades, nor could he identify which trades were based upon a broker's suggestions or his own opinion. In an order dated March 24, 1987, the district court [1] granted partial summary judgment in favor of the appellees dismissing Osborn's claims of churning and fraud. With regard to the former, the district court determined that Osborn's churning claim was deficient as a matter of law because Osborn had not established that the appellees "controlled" his accounts. The court dismissed Osborn's fraud claim because Osborn could not identify any fraudulent misrepresentations or resultant trades.

After supplemental briefing, in an order dated September 17, 1987, the district court [2] granted the appellees' summary judgment motions on the remaining claims of negligent misrepresentation and breach of fiduciary duty. The court determined that the appellees were entitled to summary judgment on the negligent misrepresentation claim because Osborn was unable to identify any specific misrepresentation or resultant trades. Similarly, although Osborn presented the deposition of an expert witness who opined that certain of Osborn's commodity losses may have resulted from the appellees' violation of his credit limits and margin calls which were not met in a timely manner, the expert could not specifically identify any such instances. In

addition, the court noted that the record contained no evidence indicating that the appellees failed to exercise reasonable care. The court similarly held that the breach of fiduciary duty claim could not stand because Osborn could not identify any act or omission constituting a breach. This appeal followed.

For reversal, Osborn argues that the district court erred in granting the appellees' motions for summary judgment because (1) genuine issues existed on the question of churning; (2) the court failed to consider facts relevant to the issue of fraud that would have been forthcoming with the allowance of additional discovery; (3) the appellees' customer agreements and company policy manuals imposed fiduciary obligations upon their brokers; and (4) Osborn's negligence claim stated sufficient factual allegations to raise a genuine issue. Osborn also contends that the district court abused its discretion in refusing to compel E.F. Hutton to produce certain documents regarding Osborn's trading activity.

In reviewing the district court's grant of summary judgment, we apply the same standard as that applied by the district court. *Stark v. St. Cloud State University*, 802 F.2d 1046, 1048 (8th Cir.1986). Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). In order to preclude the entry of summary judgment, it is incumbent upon the nonmoving party to make a sufficient showing on every essential element of its case on which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987). In determining whether the grant of a motion for summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Economy Housing Co.*

1. The Honorable Ross T. Roberts, late a United States District Judge for the Western District of Missouri.

2. The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri.

*v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985).

■ Having carefully reviewed the record in light of these principles, we conclude that the district court properly granted the appellees' summary judgment motions. Initially, the court committed no error in granting the appellees' motions with regard to Osborn's churning claim because the record fails to generate a genuine issue as to whether the appellees controlled Osborn's accounts. *See Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1203 (8th Cir.1982).

■ In addition, we agree with the district court that Osborn's failure to identify any allegedly false representations or a single trade made because of improper advice precluded the generation of a genuine issue as to the fraud claim. Although Osborn urges that this failure could have been cured by the allowance of additional discovery, the only evidence of which he claims the district court was not apprised is the deposition of his expert witness; the district court indicated in its September 17, 1987 order, however, that it had considered the expert's deposition in rejecting Osborn's breach of fiduciary duty and negligence claims. Moreover, as indicated, Osborn's expert failed to identify specific facts supporting her conclusions.

■ We similarly conclude that the district court committed no error in granting the appellees' summary judgment motions as to Osborn's state law breach of fiduciary duty and negligence claims. With respect to the former, as noted by the district court, Osborn failed to establish that the appellees did not keep him informed of the status of his accounts, that they wrongfully exercised dominion over his funds, or that they engaged in self dealing to his detriment. *See Roth v. Roth*, 571 S.W.2d 659, 668 (Mo.Ct.App. 1978); *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 396 S.W.2d 570, 575–76 (Mo.1965). Although Osborn's expert opined that the appellees had violated certain in-house rules, such a violation, absent a showing of fraud, does not provide a basis for liability. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 133–34 (8th Cir.), *cert. denied*, 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979). Osborn failed to identify any act or omission on the part of the appellees that constituted negligence, nor did he identify a single trade made as the result of a negligent act or omission. *See Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766, 783–84 (Mo. Ct.App.1983) (the elements of a claim of negligent misrepresentation include a showing "that the information was intentionally provided ... for the guidance of a limited group, including plaintiffs, in a particular business transaction").

■ Finally, the district court did not commit error by refusing to compel E.F. Hutton to produce the documents Osborn requested which were germane only to substantiate the expert witness's testimony. The district court explicitly stated in its September, 1987 order that it accepted the expert's opinions as true. Thus, failure to produce the requested documents cannot be said to have prejudiced Osborn.

In light of the foregoing and the thorough and well-reasoned treatment of the case by two experienced district judges, we affirm.