Glenn W. JOHNSON, Appellant,

v.

ENRON CORP., Enron Gas Processing Company, d/b/a Enron Liquid Fuels, Co., InterNorth, Inc. Retirement Income Plan, Enron Corp. Merger Severance Plan (f/k/a HNG/InterNorth Merger Severance Plan), Appellees.

No. 89–2242.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided June 21, 1990.

Paul D. Kratz, Omaha, Neb., for appellant.

Robert F. Rossiter, Jr., C. Robert Vote, Omaha, Neb., for appellees.

Before LAY, Chief Judge, BEAM, Circuit Judge and WOODS,* District Judge.

BEAM, Circuit Judge.

Plaintiff Glenn W. Johnson and defendants Enron Corporation, Enron Gas Processing Company, d/b/a Enron Liquid Fuels, Co., InterNorth, Inc. Retirement Income Plan, and Enron Corporation Merger Severance Plan (f/k/a HNG/InterNorth Merger Severance Plan) filed cross-motions for summary judgment pursuant to an action for benefits under the Enron Corporation Merger Severance Plan. The district court,[1] finding that the action arose under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1982 & Supp.1987) (ERISA), denied Johnson's motion for partial summary judgment, granted the defendants' motion for summary judgment, and dismissed Johnson's complaint. We affirm.

## I. BACKGROUND

In 1947, Johnson was hired by Northern Natural Gas, where he eventually became the director of finance and credit for the Liquid Fuels subsidiary in Omaha, Nebraska. Northern Natural Gas subsequently became InterNorth, Inc., and InterNorth acquired the issued and outstanding stock of the Houston Natural Gas Corporation. On July 16, 1985, InterNorth and the Houston Natural Gas Corporation merged, and the two became Enron Corporation. Johnson continued in his position as the director of finance and credit with Enron Liquid Fuels, Co., a subsidiary of Enron Corporation.

Pursuant to the merger, Enron Corporation reduced the number of its employees and relocated its staff to meet business goals. To aid in this process, Enron Corpo-

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

ration established the Merger Retirement Program for HNG–InterNorth Merger/Consolidation (Merger Retirement Program) by amending the InterNorth, Inc. Retirement Income Plan. *See* exhibit 10C, InterNorth, Inc. Retirement Income Plan, amended through Jan. 1, 1985, jt. app. at 163, 253–55. The Merger Retirement Program provided that if a qualified employee voluntarily retired prior to his retirement date, the employee would be eligible for enhanced benefits. The Merger Retirement Program, which was adopted in 1985, limited the time in which employees could elect to receive the enhanced retirement benefits. A qualified employee was required to choose the program before December 1, 1985. Once the employee opted for early retirement, the employee could retire on either December 1, 1985, or January 1, 1986. The retirement date, however, could be postponed by mutual agreement between the employer and employee, if "necessary to avoid undue disruption to the business." *Id.*, amendment no. 1, § 18.2(a), jt. app. at 254. Enron Corporation held a meeting for interested employees on October 2, 1985, to explain how the Merger Retirement Program would operate and to answer employees' questions.[2] Johnson attended the meeting, and on November 4, 1985, he elected to take early retirement under the Merger Retirement Program. By mutual agreement between Johnson and Enron Liquid Fuels, Johnson's retirement date was extended to October 1, 1986.

Enron Corporation also implemented the Enron Corporation Merger Severance Plan (Merger Severance Plan) to assist employees who were involuntarily terminated as a result of the merger. The Merger Severance Plan provided for enhanced severance benefits for employees who had been notified that their position would be terminated or relocated to a city more than thirty miles away from the employee's primary place of work. *See* exhibit 10B, Enron Corporation

Merger Severance Plan, jt. app. at 143–62. The Merger Severance Plan became effective on January 1, 1986. *Id.* at 160. Employees who elected to retire under the Merger Retirement Program on either December 1, 1985, or January 1, 1986, therefore, were not eligible for severance benefits because they had already retired, unless they postponed their retirement and were involuntarily terminated before their retirement date.

In June of 1986, Johnson received information that Enron Liquid Fuels would be transferred to Houston, Texas.[3] As a result of this transfer, Johnson believed that he would be eligible for the increased benefits offered under the Merger Severance Plan and, thus, on June 18, 1986, Johnson attempted to rescind his prior decision to receive benefits under the Merger Retirement Program. Johnson was informed that he could not rescind his election to retire early. On June 24, 1986, Johnson filed a written request for rescission with his supervisor, Bill Matheson. Johnson subsequently approached Mike Moran, Enron Liquid Fuels' corporate counsel, who told Johnson that he could not rescind his earlier decision to retire. On August 6, 1986, Matheson submitted a written response rejecting Johnson's request to rescind. Johnson appealed this denial to Enron Liquid Fuels' president, Mike Muckleroy, on September 23, 1986. Muckleroy issued a written memorandum rejecting Johnson's request on September 30, 1986.

On February 2, 1987, Johnson filed this lawsuit against Enron Corporation in the district court of Douglas County, Nebraska. Enron Corporation successfully petitioned for removal of the action on March 4, 1987. On March 13, 1987, Johnson filed a motion to remand the action to the Douglas County District Court. The United States Magistrate issued a recommendation which denied Johnson's motion to remand

---

**2.** Enron Corporation videotaped the October 2, 1985, meeting, including both the corporation's presentation and the employees' questions and concerns. *See* exhibit 3.

**3.** Johnson was not notified officially by Enron Corporation that Enron Liquid Fuels was being

relocated to Houston. Enron Corporation, however, did send a letter dated July 2, 1986, to Johnson's subordinates informing them of the relocation. *See* jt. app. at 276 (affidavit of Glenn W. Johnson).

because the magistrate found that Johnson's claims involved ERISA provisions. The magistrate also granted Enron Corporation's motion to strike Johnson's demand for a jury trial. The district court adopted the magistrate's recommendations in an August 21, 1987, order. On August 15, 1988, the district court granted Johnson's motion for leave to amend his petition to name as parties defendant each of the plans at issue in this lawsuit. The parties then filed their respective motions for summary judgment. On June 21, 1989, the district court granted Johnson's motion to file a brief out of time in opposition to Enron Corporation's motion for summary judgment. As indicated, the district court denied Johnson's motion for partial summary judgment, granted Enron Corporation's motion for summary judgment, and dismissed Johnson's complaint. On appeal, Johnson argues that: (1) Enron Corporation should not have denied Johnson's request to rescind his election of early retirement benefits, and this court must review the denial under a de novo standard of review; (2) Enron Corporation accorded Johnson disparate treatment because it allowed another employee, Robert Kroeger, to rescind his election of early retirement benefits and to elect benefits under the Merger Severance Plan; and (3) Enron Corporation violated ERISA by denying Johnson's request to elect benefits under the Merger Severance Plan, and this court must review the denial under a de novo standard.

## II. DISCUSSION

### A. Summary Judgment

■ In reviewing a district court's grant of summary judgment, this court applies the same standard as the district court applied, without giving deference to the court below. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir.1988). A court should grant a summary judgment motion if the full record discloses that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Osborn*, 853 F.2d at 618. The non-

moving party must establish significant probative evidence to prevent summary judgment. *Id.* In addition, the court must give the benefit of all favorable factual inferences to the party opposing summary judgment. *Simmons v. Diamond Shamrock Corp.*, 844 F.2d 517, 519 (8th Cir. 1988). In a trilogy of cases, the Supreme Court established that the Rule 56 motion should be interpreted to accomplish its purpose of disposing of factually unsupported claims. Also, the trial judge's function is not to weigh the evidence and determine the truth of the matter, but rather, the judge must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

### B. Standard of Review

The district court held that Johnson's cause of action arose under ERISA. Before *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), a court reviewing a denial of ERISA benefits employed the arbitrary and capricious standard. *See Simmons*, 844 F.2d at 522. In *Firestone*, however, the Supreme Court altered the standard of review to the de novo standard, unless the plan at issue provided discretionary authority to the plan's administrator for determining eligibility or for interpreting the plan's terms. *Firestone*, 109 S.Ct. at 956. In this case, the district court found that the plan's administrator was not given discretionary authority and, thus, the de novo standard was proper on review. *Johnson v. Enron Corp.*, No. 87-0-177, slip op. at 7 (D.C.Neb. June 21, 1989).

Enron Corporation argues that this court must apply two different standards of review for two of the questions before us. As to whether Johnson can rescind his election of early retirement benefits, Enron Corporation asserts that the arbitrary and

capricious standard of review is proper because the Merger Retirement Program gives discretionary authority to the plan's administrator.[4] Thus, the denial of Johnson's request to rescind his retirement benefits falls under the exception articulated by the Court in *Firestone*. *See Firestone*, 109 S.Ct. at 956. On review of the second question, whether the denial of the severance benefits was proper, however, Enron Corporation agrees that the *Firestone* de novo standard of review should apply.

■ Johnson argues that the de novo standard of review should be applied to both questions because the district court found that the plan did not grant discretionary authority to the administrator and, thus, the plan did not qualify under the exception expressed in *Firestone*. Because Enron Corporation did not cross-appeal, Johnson asserts that Enron Corporation cannot attack the district court's decree regarding the de novo standard of review. Enron Corporation's contentions, therefore, constitute an attack on the judgment below, thus requiring that a cross-appeal be taken.

We do not agree that the standard of review question raised by Enron Corporation constitutes an attack on the judgment below. Rather, Enron Corporation's assertions are merely alternative arguments in support of the district court's grant of summary judgment. Thus, a cross-appeal is not necessary. *See Massachusetts Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 480, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (per curiam) (appellee may not attack lower court's decree, with view to enlarging own rights, without taking a cross-appeal; appellee may, without taking a cross-appeal, urge any matter appearing in the record even if it involves attack on lower court's reasoning) (quoting *United States v. American Ry. Exp.*, 265 U.S. 425, 435, 44

S.Ct. 560, 563, 68 L.Ed. 1087 (1924)); 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 204.11[3] (2d ed. 1989) (alternative arguments in support of lower court's judgment do not require cross-appeal).

■ We agree with Enron Corporation that the Merger Retirement Program gives discretionary authority to the plan's administrator. Enron's denial of Johnson's request to rescind his election of benefits under the Merger Retirement Program falls under the *Firestone* exception. The proper standard of review, therefore, is the arbitrary and capricious standard. *See Niagara of Wis. Paper Corp. v. Paper Indus. Union–Management Pension Fund*, 800 F.2d 742, 745 (8th Cir.1986) (federal courts may overturn decision of private pension fund administrator only if arbitrary, capricious, or abuse of discretion). Accordingly, we apply an arbitrary and capricious standard to review Enron Corporation's denial of Johnson's request to rescind his retirement benefits. Pursuant to *Firestone*, we review de novo Enron Corporation's denial of severance benefits.

C. Johnson's request to rescind his election of early retirement benefits

■ The district court granted summary judgment to Enron Corporation because it found that, after reviewing all pleadings, documents, exhibits and attachments, there was no genuine issue of material fact. *See Johnson*, slip op. at 6. As indicated, this court must apply the same standard as the district court, without giving deference to the lower court. After carefully reviewing the record, we find that there is no genuine issue of material fact on the issue of Johnson's request to rescind his election of early retirement benefits.

Enron Corporation's denial of Johnson's request was not arbitrary and capricious. On June 18, 1986, Johnson attempted to

---

**4.** Section 13.1 of the Merger Retirement Program provides, in relevant part, that:

> 13.1 *Administration.* The Plan shall be administered by the Retirement Income Plan Committee ... which shall adopt such rules and regulations not inconsistent with the provisions of the Plan as may be appropriate in its judgment. The determinations of the Committee regarding the administration of the Plan, the construction and application of the provisions of the Plan, and the employment status, earnings and service of any person shall be binding and conclusive on all persons covered by the Plan and persons claiming through or under them.

Jt. app. at 229.

rescind his prior decision to receive retirement benefits. The Merger Retirement Program does not provide guidelines for when an employee can or cannot rescind his decision to receive retirement benefits. During an October 2, 1985, meeting, however, Enron Corporation notified its employees that if they decided to rescind their election of the program, the decision would have to be made during the time period in which employees could elect early retirement. Johnson attended the meeting and, thus, was informed that he could rescind his election of benefits only during the "window" between October 2, 1985, and December 1, 1985. *See* videotape of Oct. 2, 1985, meeting, exhibit 3; jt. app. at 89–90 (affidavit of Richard Kramer). Accordingly, Enron Corporation did not arbitrarily and capriciously deny Johnson's request.

### D. Disparate Treatment

■ Another employee of Enron Corporation, Robert Kroeger, also decided to retire early and receive benefits under the Merger Retirement Program. By mutual agreement between Kroeger and Enron Corporation, Kroeger's retirement date was postponed to July 1, 1986. Kroeger subsequently was informed that on May 31, 1986, his job would be eliminated. On May 1, 1986, Kroeger was allowed to rescind his decision to retire early and receive benefits under the Merger Retirement Program. Kroeger then elected to receive benefits under the Merger Severance Plan, which provides increased severance benefits for employees who are involuntarily terminated.

Johnson also argues that Enron Corporation's denial of his request to rescind his election of early retirement benefits was arbitrary and capricious because Kroeger was allowed to rescind his election of retirement benefits and receive benefits under the Merger Severance Plan. Thus, Johnson asserts that Enron Corporation accorded him disparate treatment, and that

this action demonstrates a lack of uniformity in the Merger Retirement Program. We do not find this argument persuasive. There is no evidence that Enron Corporation accorded Johnson disparate treatment, because Johnson and Kroeger were not in similar positions. As indicated, Kroeger had a retirement date of July 1, 1986. Enron Corporation informed Kroeger that his position would be eliminated on May 31, 1986. Thus, Kroeger lost his job before his official retirement date. Kroeger became eligible for benefits under the Merger Severance Plan because he was terminated at the election of Enron Corporation. Enron Corporation acknowledged Kroeger's eligibility and allowed Kroeger to choose between the two plans because Kroeger was qualified to receive benefits under either plan.

Johnson, on the other hand, had a retirement date of October 1, 1986. In June of 1986, Johnson received information that his position would be transferred to Houston sometime *after* his retirement date. Johnson did not automatically become eligible for benefits under the Merger Severance Plan. Accordingly, there is no evidence that Enron Corporation treated Johnson differently than Kroeger when it denied Johnson's request to rescind his election of retirement benefits because, as stated, Johnson and Kroeger were not in similar positions.

■ Johnson also argues that Enron Corporation accorded him disparate treatment by denying his request for benefits under the Merger Severance Plan. Johnson asserts that because Kroeger was allowed to elect severance benefits, Enron Corporation did not offer Johnson the same opportunity as Kroeger. Pursuant to the Merger Severance Plan, Kroeger clearly was involuntarily terminated under section 2(a) because his employment with Enron Corporation was terminated "at the election of the Company." Merger Severance Plan, § 2(a), jt. app. at 146.[5] Johnson, on

---

**5.** Section 2(a) of the Merger Severance Plan provides, in relevant part, that:
*Section 2—Involuntary Termination*

For purposes of this Plan, "Involuntary Termination" or "Involuntarily Terminated" shall mean:

the other hand, clearly was *not* involuntarily terminated under section 2(a). Rather, there is a question concerning whether Johnson was involuntarily terminated at all. If he was, which is unlikely, it was under the terms of section 2(b)[6] of the plan. Thus, we find no evidence of disparate treatment on this question, because Kroeger became eligible for severance benefits under a different provision of the plan. Further, the relocation which purportedly triggered Johnson's involuntary termination under section 2(b) did not become effective in time to affect his status under the two plans.

E. Enron Corporation's denial of severance benefits

 The district court also granted summary judgment on the question of whether Enron Corporation's denial of severance benefits to Johnson violated ERISA. The district court found that Johnson was not eligible for benefits under the Merger Severance Plan. The proper standard of review for a denial of benefits, as previously indicated, is the de novo standard.

The Merger Severance Plan provides that an employee who is eligible to receive benefits under the plan must be notified that he will be involuntarily terminated within the period of July 16, 1985, through July 15, 1987. The plan provision, which applies to Johnson, defines "involuntarily terminated" as "notification of a relocation of the employee's primary place of work to a location more than 30 miles away from the employee's primary place of work at the time of the notice." Merger Severance Plan § 2(b), jt. app. at 144, 147–48. The question arises, therefore, whether Johnson was "involuntarily terminated." The district court determined that Johnson was

not "involuntarily terminated." We agree. As indicated, Johnson voluntarily chose to retire and receive benefits under the Merger Retirement Program. Johnson's decision and his retirement date were prior to the date of Enron Liquid Fuels relocation in Houston. Thus, Johnson does not qualify for severance benefits because he was not involuntarily terminated as defined in section 2(b).

## III. CONCLUSION

Accordingly, after a careful review of the record, we affirm the district court's grant of Enron Corporation's motion for summary judgment and its denial of Johnson's motion for partial summary judgment.

(a) Termination of an employee's employment with the Company (or any of its operating divisions, units or subsidiaries, or a Divested Entity) at the election of the Company (or new owners of a Divested Entity) ...
Jt. app. at 146.

**6.** Section 2(b) of the Merger Severance Plan provides, in relevant part, that:
(b) Termination of employment with the Company (or any of its operating divisions,

units or subsidiaries, or a Divested Entity) by the employee in connection with or based upon:

(ii) notification of a relocation of the employee's primary place of work to a location more than 30 miles away from the employee's primary place of work at the time of the notice

Jt. app. at 147–48.