**414**

Allen SOO, et al., Plaintiffs,

v.

The MAUMELLE COMPANY,
et al., Defendants.

Civ. No. LR–C–92–439.

United States District Court,
E.D. Arkansas, Western Division.

April 15, 1994.

James Gerard Schulze, Robert L. Gross,
Gary Eubanks & Associates, Little Rock,
AR, for Allen Soo, Evelyn Soo.

Robert L. Gross, Gary Eubanks & Associates, Little Rock, AR, for Steven Barham.

George F. Pike, Jr., John T. Harmon,
North Little Rock, AR, for defendants.

## MEMORANDUM AND ORDER

JONES, United States Magistrate Judge.

Now pending are plaintiffs' motion for class certification, defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment. Also pending is plaintiffs' motion for authorization to submit affidavits (Doc. # 40).

In their complaint, plaintiffs, who bought property in Maumelle, Arkansas, a subdivision owned by defendant DeHaven, Todd & Co., and listed for sale by defendant The Maumelle Company, allege they were induced to purchase property in the subdivision by false promises made by the sales agents, in violation of the Interstate Land Sales Full Disclosure Act (the Act), 15 U.S.C. sections 1701 *et seq.*, and that defendants failed to provide a property report at the time the agreement to purchase the property was signed, also in violation of the Act; that the representations made by defendants'

agents constituted fraud, deceit and misrepresentation; that the defendants are liable for breach of contract in that most of the improvements promised have not been completed; and that the actions of defendants constitute intentional infliction of emotional distress. Plaintiffs request rescission of the promissory notes signed by them, return of the down payments and any other payments made by them, with interest, compensatory and punitive damages and attorney's fees and costs.

The Court will first address the parties' motions for summary judgment. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Although the moving party has the burden of showing the absence of a genuine issue of material fact, the nonmoving party has the burden of producing "evidence that would support a jury verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Summary judgment must be granted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The nonmovant has an affirmative burden "to go beyond the pleadings" and "by affidavit or otherwise" designate "specific facts showing that there is a genuine issue for trial." *Commercial Union Insurance Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (citations omitted).

The non-moving party must establish significant probative evidence to prevent summary judgment. In addition, the court must give the benefit of all favorable inferences to the party opposing summary judgment. In a trilogy of cases, the Supreme Court established that the Rule 56 motion should be interpreted to accomplish its purpose of disposing of factually unsupported claims.

*Johnson v. Enron Corp.* 906 F.2d 1234, 1237 (8th Cir.1990) (citations omitted).

When a party opposing summary judgment fails in its burden, summary judgment "may and should be granted" if the moving party otherwise satisfies the Rule 56(c) requirements. Summary judgment is not to be construed as a "disfavored procedural short-cut" but should be interpreted to accomplish its purpose of isolating and disposing of factually unsupported claims and defenses. Yet the Supreme court also notes that trial courts should act with great caution and may deny summary judgment when it believes "the better course is to proceed to a full trial."

*Commercial Union Insurance Co. v. Schmidt*, 967 F.2d at 272.

[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* supra at 247–50 (citations omitted).

■ In their motion for summary judgment, defendants argue that beginning June 3, 1989, they were exempted[1] from the requirements of the Act because of their inclusion of a "building provision"[2] in the sales

---

1. Section 1702 of the Act provides:
   *Sale or lease of lots generally.*
   (a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—
   \* \* \* \* \* \*
   (2) the sale or lease of any improved land of which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years; ....

2. The contract contained the following provision: "Upon Buyer providing to Seller satisfactory evidence of construction financing, Seller agrees to construct on the lot a residential home in conformity with plans and specifications presented by Buyer prior to two years from the date of this Real Estate Sale and Construction Contract. Buyer shall have the right to specifically enforce

# 416

contracts, which bound them to erect a residential building on the properties sold within two years from the date of the sale.[3]

Plaintiffs also request summary judgment in their favor. They argue that the building provision in defendants' sales contract is insufficient to create the exemption because it did not unconditionally obligate the defendants to build a house for the buyers within a period of two years and it required the buyers to perform several obligations before defendants' duty to build a home on the lot arose. They contend

> the seller's obligation to build a house on the lot is conditioned upon the buyer's providing plans, securing financing, and paying the full cost of the construction of the house plus ten percent. [The] provision also limited the seller's duty to perform within two years if weather conditions were encountered, or if the buyer failed to comply with the requirements of that provision. The seller could avoid any responsibility to build a house simply by making it economically unfeasible for the buyer to comply. The Maumelle Company retained the right to select the materials and the labor, which cost could easily be made prohibitive.

In *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 104–05 (3rd Cir.1990), the court discusses the exemption claimed by defendants in this case and addressed by the "Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act," at 24 C.F.R. Ch. X, Part 1710, App. A (1989).

> While noting that "remedies clauses are matters to be decided by the parties to the contract under the laws of the jurisdiction in which the construction project is located," the Secretary has provided that "the contract must not allow nonperformance by the seller at the seller's discretion. . . . contracts that permit the seller to breach

virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for any reason within the seller's control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct. HUD's position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated. *For example, a contract that provides for a refund or damage action as the buyer's sole remedy would not be acceptable.*

*Id.* (emphasis in original).

The Court first notes that the Act clearly is intended to cover residential property and plaintiffs' argument that the exemption contemplates that "the seller, not the buyer, will undertake the entire obligation to build the building" and that the provision used by the defendants "merely obligates the seller to enter into another contract to build a house" is untenable. The Court finds that the building provision in the sales contract at issue in the present case was sufficient to create the exemption relied upon by defendants. The Court views the "conditions" cited by plaintiffs as reasonable steps in the actual construction process. The Court does not find these requirements negate the rights of the purchasers. The sales contracts provided the buyers the remedy of specific performance and I find this is sufficient to create the exemption.

■ Plaintiffs also assert that, if the building provision was sufficient to create the exemption, it is nevertheless a nullity because it was adopted for the purpose of evad-

this Agreement against Seller or seek damages or any other remedies provided by law for breach of this Agreement by Seller."

**3.** Defendants further assert that any claim arising before that time is barred by the three year statute of limitations because this action was not filed until July 14, 1992. At the hearing on the

motion for summary judgment, plaintiffs stated they were only asking for relief based on claims that arose during the time defendants did not provide the property reports. The Court finds the three year statute of limitations found in 15 U.S.C. section 1711 precludes the litigation of all claims that arose prior to July 14, 1989.

ing the Act. In support of this, plaintiffs present the following:

1. In the case of *Eskola v. The Maumelle Company*, Pulaski Circuit No. 91–2304, a jury found that the defendants adopted the building provision with the intent of evading the Act, that the defendants violated the Act and assessed damages against defendants;

2. The following deposition testimony of defendant Jay DeHaven, which plaintiffs contend "suggests that he 'assumed that liability' so that he could sell [i.e. with the purpose of selling] his property more competitively":

A. Because we began selling under an exemption under the Interstate Land Sales Act that basically says that we assume a liability of building a home when the demand is made upon us, therefore, that exemption is valid. And you don't give property reports when you assume that liability.

Q. So—

A. Subsequently, you can—you reduce a lot of costs, so you're able to sell your property more competitively.

3. Testimony by Judy Pickens and Mary Peyton in the trial of the *Eskola* case that indicated The Maumelle Company simply referred the property owners to a builder and never actually built a house;

4. Testimony by Jeffery Ellison that he bought a lot from defendants and intended to build a house, but the Maumelle Company did not comply with the building provision;

5. Testimony from Phillip Patterson, the Building Inspector for the City of Maumelle, that where Mr. DeHaven asserted that 507 houses were under construction, the number of housing permits was only 151, which is not a very large number of homes constructed out of the two thousand or more lots that were sold; and

6. Testimony by Glenn Eskola that defendants' salesmen were willing to remove the building provision if necessary to make a sale.

Plaintiffs also contend that defendants had a strong incentive to stop using the property report because they engaged in a highly structured and developed sales plan to mass market the lots and a property report would have disclosed to purchasers that they had the legal right to cancel the contract by giving notice to the seller within seven days; the future value of land was uncertain and dependent upon many factors; and resale of the lots may be difficult or impossible because of the competition of the sales program and local real estate brokers may not be interested in listing the lot. The report also advised the buyer to seek professional advice before obligating himself or herself.

All parties agree that no court thus far has interpreted the phrase "Unless the method of disposition is adopted for the purpose of evasion of this Chapter. . . ." Plaintiffs define "evasion" as "to escape from by trickery or cleverness" or to get around by "trickery." They also argue that "[t]he plain meaning of the language of the Act is that if the seller adopts a method of selling property that superficially resembles an exempted transaction, but does so with the purpose of skirting the ILSFDA, the law will not give effect to the exemption."

Using plaintiffs' definition, this Court must determine whether the evidence cited by plaintiffs is sufficiently probative to present a genuine issue of fact as to whether the building provision adopted by defendants was mere artifice to escape punishment under the Act. The Court first notes that many of plaintiffs' assertions contained in their briefs were not supported by references to specific parts of the record. The Court does not view the evidence cited by the plaintiffs as sufficiently probative to survive defendants' motion for summary judgment. First, the *Eskola* case was reversed because of lack of jurisdiction by the trial court. *The Maumelle Co. v. Eskola*, 315 Ark. 25, 865 S.W.2d 272 (1993). Secondly, Mr. DeHaven's testimony that the exemption allowed more competitive prices for the properties is not evidence that he intended to evade the Act.

Furthermore, plaintiffs mischaracterized the testimony of Judy Pickens and Mary Peyton. They testified that, although defendants did not actually construct the houses themselves, they worked closely with the lot owners drawing up plans and getting bids from builders.

418

Plaintiffs also mischaracterized the testimony of Jeffery Ellison. Mr. Ellison was apparently misled by a sales agent into believing he could build a house on his lot for thirty dollars a square foot. He testified that, after he was told he could not build the house from his plans for that price, defendants' agents worked with him and finally drew up plans that would allow him to build a home with monthly payments of $700, which was acceptable to him, but he refused to build when he learned he would have to pay an additional $83 a month in taxes and insurance.

The Court does not view the mere number of houses constructed as probative of the issue. This number necessarily depended upon the number of persons who wanted to build and who submitted plans. There is no evidence in this record, other than Mr. Ellison's situation, that defendants discouraged building or refused to build homes in Maumelle. On the other hand, all of the defendants testified they encouraged building and that home construction added to the value of the properties. Thus, I find plaintiffs have failed to present "significant probative evidence to prevent summary judgment." *Johnson v. Enron Corp.,* supra.

Given the disposition of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. section 1367.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and it is hereby, granted. Plaintiffs' motion for summary judgment is denied. Plaintiffs' motion for class certification and motion to submit affidavits are denied as moot.

IT IS FURTHER ORDERED that plaintiffs' supplemental claims are dismissed.

SO ORDERED.