856 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald BENNAFIELD, Plaintiff-Appellant, Cross-Appellee,
v.
CITY OF CANTON POLICE DEPARTMENT; Chief of Police Thomas
Wyatt, in his Official Capacity,
Defendants-Appellees, Cross-Appellants.
 Nos. 87-3919, 87-3959.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1988.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant/cross-appellee, Mr. Donald Bennafield, appeals from the District Court's grant of summary judgment in favor of defendants, the City of Canton, Ohio and the Canton Police Department, et. al. in his section 1983 claim arising out of defendants' release of a victim incident report accusing plaintiff of rape to the Cable News Network (CNN) which CNN subsequently aired on national cable television. Plaintiff argues that the impact of this release and broadcast upon his right to employment and penumbral First Amendment right of association were property and liberty interests sufficient to satisfy the "stigma-plus" test of Paul v. Davis, 424 U.S. 693 (1976), and thus rose to the level of a constitutional violation cognizable under section 1983. Defendants, in their cross-appeal, argue inter alia that the District Court erred in its finding that the victim incident report was a non-public document under Ohio law. Defendants argue that under an Ohio statute they were required to disclose the incident report and thus their actions in making this public document available could not have violated plaintiff's constitutional rights. For the reasons stated below we affirm the judgment of the District Court because the plaintiff has not stated a cognizable claim under 42 U.S.C. Sec. 1983.
 
 
 2
 Plaintiff was president and founder of Cobra Connection of America, Inc., an organization whose alleged goal was to locate missing children. In the summer of 1985 CNN was doing an expose of organizations throughout the country that purported to locate missing children. CNN's reporters, after receiving a tip, investigated Cobra Connection. In the course of their investigation CNN reporters travelled to Canton, Ohio and requested from the defendant, Canton Police Department, copies of all "incident reports" which listed plaintiff as a suspect.[1] A clerk at the police department, pursuant to a city policy of releasing public records, provided the CNN reporters with an incident report filed by Ms. Cynthia M. Curry accusing plaintiff of the crime of rape. After receiving the report and interviewing plaintiff, CNN broadcasted a program three separate times on August 15, 1985 in which the Curry incident report was displayed and it was mentioned that plaintiff had been accused of, but not charged with, rape.
 
 
 3
 Plaintiff brought a 1983 action against defendants and CNN (CNN was later dismissed) alleging that defendants' actions in disclosing the Curry incident report to CNN caused plaintiff to be stigmatized and resulted in a chilling of his First Amendment right of association thus stating a claim under section 1983. In its sua sponte grant of summary judgment for defendants, the District Court initially determined that the Curry incident report released to CNN was not a public record as that term is defined under Ohio law. Joint Appendix (JA) at 161-63. The City cross-appeals this finding. The District Court further found that plaintiff did not meet the "stigma-plus" test of Paul. JA at 165-68.
 
 
 4
 Defendants argue as a preliminary matter that the District Court should have abstained from deciding the threshold state law issue in this case--whether the police incident report was a public record or confidential law enforcement investigatory record under the pertinent Ohio statutory provision. See Ohio Rev. Code Ann. Sec. 149.43 (Page 1984). The District Court held as a matter of law that the victim incident report was not a "public record," relying upon a state mandamus case currently pending before the Ohio Supreme Court. See Ohio ex. rel. Outlet Communications, Inc. v. Lancaster Police Dep't, No. 23-CA-86 (Ohio Ct.App. August 10, 1987) (appeal pending before Ohio Supreme Court).[2] Defendants argue, citing Railroad Commissioner v. Pullman Co, 312 U.S. 496 (1941) and Burford v. Sun Oil Co., 319 U.S. 315 (1943), that the District Court should have abstained in this instance either because the District Court could thereby have avoided rendering an unnecessary constitutional decision or because this case involves a complex question of state law. We disagree.
 
 
 5
 Commentators have identified at least four "types" of abstention doctrines: (1) Pullman -type abstention, used to avoid decision of federal constitutional questions when the case hinges upon unresolved questions of state law; (2) Buford -type abstention, used to avoid needless federal entanglement in a state's administration of its own affairs; (3) abstention used to allow the states to resolve unsettled questions of state law; and (4) Colorado-River -type abstention, used to avoid duplicative litigation in complex cases. See 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4241 at 28-29 (1988). Notwithstanding the burgeoning caselaw concerning abstention, federal courts have long recognized that "[t]he abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." Baggett v. Bullitt, 377 U.S. 360, 375 (1964). We refuse to turn a narrowly tailored exception to this court's jurisdiction into a broadly applicable rule which the parties may invoke willy-nilly in every federal suit that involves one or more questions of state law. We feel that the mere difficulty of ascertaining or anticipating how state courts may rule on an issue is in and of itself an insufficient basis for a federal court to decline jurisdiction. See In re Mohammed, 327 F.2d 616, 617 (6th Cir.1964). See also Ann Arbor Trust Co. v. North Am. Co. for Life & Health Ins., 527 F.2d 526, 527-28 (6th Cir.1975), cert. denied, 425 U.S. 993 (1976). Furthermore, we note that regardless of the result reached by the Ohio Supreme Court in the state litigation now pending we would still reach the same conclusion as to the federal constitutional issue presented here.
 
 
 6
 To establish a cause of action under section 1983 plaintiff must show that action taken under color of state law denied him either a constitutionally recognized liberty or property interest. See, e.g., Monell v. Dept. of Social Servs., 436 U.S. 658, 690-91 (1978).[3] The District Court held on the basis of Paul that plaintiff's alleged injury amounted to nothing more than the injury associated with every defamation claim. JA at 168. Although the Supreme Court has not clearly delineated the extent of protected liberty interests, the Court did outline in Paul a situation where a liberty interest will not arise. In Paul, the Supreme Court held that reputation alone without some "more tangible interests" is not by itself a sufficient liberty or property interest under the Fourteenth Amendment to support a claim under section 1983. The plaintiff must demonstrate the deprivation of an interest "initially recognized and protected by state law." Paul, 424 U.S. at 710. The Court's apparent concern in Paul was that every defamation case against state entities would become a cognizable claim under section 1983 simply because the state action had "stigmatized" the plaintiff. The Court addressed this concern by requiring plaintiffs to prove under section 1983 not only that the state's actions stigmatized the plaintiff but also that this injury was coupled with the alteration of a recognized interest or status created by the state. Id. at 710-11.
 
 
 7
 This Circuit has adopted a "strict" view of Paul, requiring the deprivation of a tangible state created right or interest before plaintiff's liberty rights have been infringed. See Naegele Outdoor Advertising Co. v. Moulton, 773 F.2d 692, 701 (6th Cir.1985), cert. denied, 475 U.S. 1121 (1986). The Naegele Court recognized this "plus" factor in Paul when it characterized the cognizable losses in a number of Supreme Court opinions as not simply defamation alone but the additional loss of government employment in Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886 (1961) and the right to purchase or obtain liquor in Wisconsin v. Constantineau, 400 U.S. 433 (1971). Naegele, 773 F.2d at 701-02.
 
 
 8
 In the case at bar plaintiff argues that his inability to obtain employment and the impingement upon his right of association under the First Amendment satisfy the Paul test. We disagree. Plaintiff has not suffered the extinction or alteration of any right or status previously recognized by state law. Plaintiff has suffered no loss of employment as a result of the release of the incident report. As the District Court noted, at the time of the CNN report plaintiff was unemployed and had been for two years--"[w]hile [plaintiff] may have been deprived of future employment, there is no recognized right to future employment under Ohio law." JA at 167 (emphasis in original).
 
 
 9
 Plaintiff also argues that his penumbral First Amendment right of association was infringed by the defendants' actions. Plaintiff demonstrated that two volunteers who formerly worked for plaintiff's Cobra organization discontinued their association with plaintiff because of the rape allegations made public by defendants. We agree with the District Court that recognition of plaintiff's First Amendment claim here "would literally turn on its head the holding in Paul v. Davis, supra, for it would create a federal cause of action for every state action defamation claim." JA at 168.
 
 
 10
 For the foregoing reasons we AFFIRM the District Court's judgment based upon federal constitutional grounds.
 
 
 
 [1]
 In their brief defendants describe an incident report as a "routine factual chronolog[y] of events." They assert that the desk officer on duty at the time of the report merely records the alleged victim's statements and, as such, these reports are not the product of any investigatory police function. Defendant's Brief at 13
 
 
 [2]
 Although we address defendants' abstention argument we express no opinion on the proper construction of the state statute itself. Even assuming the incident report to be a non-public document, plaintiff's section 1983 claim fails under Paul v. Davis, 424 U.S. 693 (1976). Because defendants' "cross-appeal" essentially presents an alternative ground to support the decision below, in light of our affirmance we find it unnecessary to review the District Court's interpretation of the Ohio statute. Cf. United States v. American Ry. Express Co., 265 U.S. 425, 435-36 (1924)
 
 
 [3]
 Neither party disputes that the actions taken here were pursuant to city policy. See Plaintiff's Brief at 4