98 F.3d 1360
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ruth Ann WORMAN and Howard S. Worman, Plaintiffs-Appellees,
v.
The UNITED STATES, Defendant-Appellant.
 No. 95-5067
 United States Court of Appeals, Federal Circuit.
 Oct. 17, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Dec. 26, 1996.
 
 Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 The United States (government) appeals from the judgment of the United States Court of Federal Claims, Worman v. United States, No. 92-475C (Fed.Cl. Jan. 9, 1995), holding that the government's actions with respect to the property of Ruth Ann Worman and Howard S. Worman (the Wormans) constituted a taking under the Fifth Amendment to the United States Constitution and awarding just compensation. Because the government's actions did not constitute a taking for which such compensation is required, we reverse.
 
 
 2
 * In 1989, Mr. Worman accepted employment as an aircraft mechanic in the United States Virgin Islands and the Wormans arranged with the Tropical Shipping Company (Tropical Shipping) to ship four crates of personal property from New Jersey to the Virgin Islands. The property consisted of tools that Mr. Worman needed for his employment and a handgun owned by Mrs. Worman.
 
 
 3
 The property arrived in the Virgin Islands on or about September 15, 1989, where it was taken to a warehouse owned by Tropical Shipping for inspection by the United States Customs Service (Customs). In the course of examining the property, Customs found the handgun and, using a computer tracking system, determined preliminarily that the handgun was stolen. Customs directed Tropical Shipping not to release the entire shipment, including the aircraft tools, until the status of the handgun could be finally determined.
 
 
 4
 On September 17, 1989, while the property remained in the warehouse, Hurricane Hugo visited the Virgin Islands and damaged the warehouse. On September 30, 1989, Customs authorized Tropical Shipping to release all of the Wormans' property save the handgun. On the same day, Mr. Worman arrived at the warehouse to claim his property, but found substantially all of the contents of the four crates gone.
 
 
 5
 On May 4, 1990, Mr. Worman filed an administrative claim against Customs for $61,405.69 for the loss of his tools. Citing the exemption to the Federal Tort Claims Act (FTCA) for Customs' actions, 28 U.S.C. § 2680(c) (1994), Customs denied this claim on December 18, 1990. Subsequently, the Wormans sued Customs in the United States District Court for the District of New Jersey on tort and implied contract theories. Because of the exemption for Customs in the FTCA and because the implied contract claim could only be heard in the Court of Federal Claims,[1] the District Court dismissed the complaint with prejudice to the extent that it alleged claims under the FTCA and transferred the case to the Court of Federal Claims.
 
 
 6
 Acting sua sponte, the Court of Federal Claims added a claim that the government took the Wormans' property without just compensation in violation of the Fifth Amendment. After a trial held in October 1993, the Court of Federal Claims issued a decision on the implied contract and takings claims on September 16, 1994. As to the implied contract claim, the Court of Federal Claims ruled for the government because the Wormans had failed to establish the existence of an implied contract. As to the takings claim, the Court of Federal Claims found as matters of fact that Hurricane Hugo, security problems at the Tropical Shipping warehouse, and looting were not the cause of the Wormans' loss. Instead, the Court of Federal Claims found that Customs' detention of the Wormans' property for a public purpose caused the Wormans' loss. Because Customs failed to follow its own procedures in securing the Wormans' goods, the Court of Federal Claims held that the government committed a taking. After the Court of Federal Claims set the amount of damages at $66,333.09 plus interest, the government appealed to this court.[2]
 
 II
 
 7
 We review findings of fact made by the Court of Federal Claims for clear error. Whitney Benefits, Inc. v. United States, 926 F.2d 1169, 1171 (Fed.Cir.), cert. denied, 502 U.S. 952 (1991). Legal conclusions are reviewed de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992). We have jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(3) (1994).
 
 III
 
 8
 We do not agree with the Court of Federal Claims that Customs' mishandling of private property while detained for inspection is a taking by the government requiring just compensation.[3] Our decision is driven by two factors: first, the failure of government officials to safeguard property detained for Customs inspection is not a taking because the property detained is not used for a public purpose, and second, seeking restitution for the government's failure to safeguard so detained property is clearly an action sounding in tort and thus not within the jurisdiction of the Court of Federal Claims.
 
 
 9
 It is axiomatic that "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). Manifestly, the detention of goods by the government in exercise of its authority to inspect, to prevent harm to the public if the detained goods prove to be illegal, does not place the burden of providing for the public's needs unfairly on the party whose property was seized. Thus, damage done to property held in the custody of the government when exercising its authority to inspect does not amount to a taking. See United States v. One (1) 1979 Cadillac Coup De Ville, 833 F.2d 994, 1000-01 (Fed.Cir.1987) (depreciation of vehicle's value during time vehicle was in government custody is not a taking); Alde, S.A. v. United States, 28 Fed. Cl. 26, 33-34 (1993) (damage done to helicopter by Hurricane Hugo while in government custody is not a taking). This is so even if the owner of the property is entirely blameless. Cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-90 (1974) (in rem case denying recovery to blameless owner).
 
 
 10
 In this case, Customs detained the Wormans' property pursuant to its authority to inspect goods entering the Virgin Islands, see 48 U.S.C. § 1395 (1994), for the purposes of protecting the public from harm. Simply stated, there has been no public use of the Wormans' property. Detention of goods by Customs for inspection is not public "use" of those goods. The Court of Federal Claims erred as a matter of law in equating lawful detention with public use. The loss inflicted on the Wormans as a result of the exercise of Customs' authority to inspect is not a taking.[4]
 
 
 11
 Here, the essence of the Wormans' claim is that Customs, charged with a duty of care to safeguard goods in its possession, somehow allowed the goods to become lost. Indeed, the linchpin of the Court of Federal Claims' decision is its statement that Customs' "failure to follow its own procedures in securing the [Wormans'] goods" caused the Wormans' loss. Such a failure to follow procedures, or in other words a breach of a duty of care, may be a negligent tort. It is not a taking. See Lucien v. Johnson, 61 F.3d 573, 575-76 (7th Cir.) (loss of prisoner's mail by a prison occurring because of negligence of prison guards is not a taking), cert. denied, 116 S.Ct. 572 (1995); B & F Trawlers, 27 Fed. Cl. at 304-06 (sinking of seized ship by Coast Guard to save its own ship is not a taking because action was not for a public use).
 
 
 12
 Although private parties are liable for their tortious actions, the government may only be sued to the extent that it has waived its sovereign immunity. While the FTCA waives sovereign immunity for some tortious actions committed by the government, it is clear that there is no waiver for tortious acts committed by Customs officials arising out of the detention of goods. The bar to recovery by the Wormans is created by Congress, not by the courts. See 28 U.S.C. § 2680(c) (1994); Kosak v. United States, 465 U.S. 848 (1984). In any event, the Court of Federal Claims does not have jurisdiction to entertain tort claims against the United States. See 28 U.S.C. § 1491(a)(1) (1994).
 
 
 13
 Since no taking occurred here, the decision of the Court of Federal Claims is reversed.
 
 
 
 [1]
 Since the Wormans' implied contract claim was greater than $10,000, the District Court had no jurisdiction to hear the claim. See 28 U.S.C. § 1346(a)(2) (1994)
 
 
 [2]
 The Wormans as appellees were entitled to defend the judgment of the Court of Federal Claims on any ground. See Dandridge v. Williams, 397 U.S. 471, 475 n. 6 (1970); United States v. American Ry. Express Co., 265 U.S. 425, 435-36 (1924). Thus, the Wormans could have challenged the decision of the Court of Federal Claims that no implied contract existed between the Wormans and the government. Because the Wormans did not do so, that issue is waived and we will not address it
 
 
 [3]
 To support its contention that no taking occurred, the government argues on appeal that the Wormans failed to establish a direct causal link between the government's actions and the harm suffered. In this regard, the government challenges as clearly erroneous the Court of Federal Claims' factual findings that the Wormans' loss was due to Customs' conduct, and not Hurricane Hugo, lax security at the Tropical Shipping warehouse, or looting. Because we conclude that, even accepting the Court of Federal Claims' fact finding, no taking occurred, we need not reach this issue and will take the facts as found by the Court of Federal Claims
 
 
 [4]
 The Wormans' citation of Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573 (Fed.Cir.1993), is inapposite. In that case, we held that the Navy's occupation and destruction of a warehouse resulted in a taking. In reaching that conclusion, we explained that the Navy's entry into the warehouse constituted a public use because it was necessary to maintain order on the overseas military base. Id. at 1583. In contrast, as we have explained, Customs' detention of the Wormans' property to ascertain its legality does not constitute a public use