NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3342
_____

SUSAN HAAS,
Individually and as Executrix of Carl Brasmer,
and Individual Heirs of the Estate of Carl Brasmer,
Appellant

v.

3M COMPANY; THE BOEING COMPANY, Individually and as Successor to
McDonnell Douglas Corporation; CBS CORPORATION, Individually and as Successor
to Viacom, Inc., and Successor to Westinghouse Electric Corporation; HONEYWELL
INTERNATIONAL, INC., Individually and as Successor to the Bendix Corporation;
GENERAL ELECTRIC COMPANY; GOODRICH CORPORATION, Individually and
as Successor to the B.F. Goodrich Company; GOODYEAR TIRE & RUBBER
COMPANY; NORTHROP GRUMAN CORPORATION, Individually and as Successor
to Gruman Aerospace Corporation, f/k/a Gruman Aircraft Engineering Group


*Susan Haas, Individually and as Executrix of Carl Brasmer,
and Individual Heirs of the Estate of Carl Brasmer
*Pursuant to F.R.A.P. 12(a)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-12-cv-02944)
District Judge: Hon. Freda L. Wolfson
_____

Argued
June 3, 2015

Before: FISHER, JORDAN, and SHWARTZ, *Circuit Judges*.

(Filed: July 7, 2015)

_____

Michael E. McMahon
Christopher M. Placitella   [ARGUED]
Cohen, Placitella & Roth
127 Maple Avenue
Red Bank, NJ   07701
        *Counsel for Appellants*

Timothy K. Kapshandy
Edward P. Kenney
Laura A. Sexton
Sidley Austin
One South Dearborn St.
Chicago, IL   60603

Rebecca K. Wood   [ARGUED]
Paul J. Sampson
Sidley Austin
1501 K Street, N.W.
Washington, DC   20005
        *Counsel for Appellee General Electric Co.*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Appellant Susan Haas, individually and as the executrix of the estate of her father, Carl Brasmer, and on behalf of his individual heirs, appeals an order issued by the United States District Court for the District of New Jersey granting summary judgment for General Electric Company ("GE") on claims that Brasmer's exposure to GE's asbestos-containing J79-GE-17A engine (the "J79 Engine") during his service in the United States

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Air Force caused his mesothelioma. Because there is sufficient evidence from which a reasonable factfinder could find that Brasmer's exposure to the J79 Engine caused his illness, we will vacate the summary judgment order as to GE and remand for further proceedings.[1]

## I.   Background[2]

### A.   Factual Background

Brasmer served in the United States Air Force as an assistant crew chief and then crew chief from approximately 1969 to 1973. During that time, he was stationed at several different military bases, including Lackland Air Force Base ("AFB") in Texas, Homestead AFB in Florida, Da Nang AFB in Vietnam, Webb AFB in Texas, Albuquerque AFB in New Mexico, and bases in Thailand. At Homestead AFB, Da Nang AFB, and in Thailand, Brasmer worked on the F-4E Phantom jet (the "F-4E"), manufactured by the McDonnell Douglas Corporation, a company later acquired by the Boeing Company ("Boeing"). The F-4Es were primarily outfitted with the J79 Engine, which GE had designed in conjunction with the United States Air Force and the United States Navy. The Air Force and Navy specifications mandated the use of asbestos-containing materials in certain parts of the F-4E, including the parts within the J79

---

[1] The order granting summary judgment addressed not only GE's motion but also a motion for summary judgment by Boeing. The latter ruling is not before us. *See infra* note 3 and text accompanying note 10.

[2] These facts are recounted in the light most favorable to Haas, the non-movant. *See infra* note 5.

3

Engine, and any failure to adhere to those requirements may have led the government to reject the aircraft.

At each base, Brasmer was assigned to a specific, single aircraft; however, if necessary, he would provide assistance on other aircraft of the same model. His responsibilities required him to repair, maintain, and service the aircraft, as well as perform pre- and post-flight inspections, which included checking fuel levels, checking and changing tires, inspecting and replacing landing gear brakes, inspecting and replacing seals and gaskets, and inspecting engine shielding. GE's corporate representative, Gene Davis, testified at his deposition that the J79 Engines contained approximately 147 gaskets and clamps, all containing asbestos. Davis further testified that, over time, the GE-made gaskets and clamps often broke down and that, when this occurred, the asbestos decayed. When that happened, the gaskets and clamps were replaced, sometimes with parts not manufactured by GE.

Brasmer offered the report of an aviation expert, Mark Thomson, who explained how the gaskets and clamps would have exposed Brasmer to asbestos:

> Due to extreme temperatures, noise, and vibration experienced within the engine compartment, the normal and intended operation of the aircraft caused the asbestos-components [of the J79 Engine] to deteriorate, crumble, flake, and contaminate the entire engine compartment. Additionally, any inspection or repair work inside the engine compartment, including, but not limited to, removing, installing, or repairing engine component[s] and including such regular tasks as replacing gaskets, engine inspections, checking fuel filters, oil leaks, exhaust leaks, and electrical connections, along with other minor repairs, required the manipulation of the exposed components. All of these actions and activities caused the asbestos-containing

4

components [to] be released into the engine space and ambient air, which exposed [Brasmer] and others to asbestos.

(App. at 544.)

During his deposition, Brasmer testified that he replaced seals and gaskets in the engine compartment of the F-4E, and that he wiped down the dusty engine compartment with a dry cloth. Brasmer further testified that he worked on engine seals that contained a fiberglass-like component which he assumed was asbestos.

## B. Procedural History

In February 2012, Brasmer was diagnosed with malignant pleural mesothelioma, and, in April 2012, he filed a state court action against, among others, Boeing and GE, alleging that his mesothelioma was caused by exposure to the defendants' asbestos-containing products during his Air Force service. Boeing then removed the action to federal district court. During discovery, Brasmer was deposed over a period of three days; however, he died before his deposition could be concluded. As Haas concedes, her father's deposition was not a "beacon of clarity" because he was on strong medications. (Opening Br. at 14.) For part of the time, though, Brasmer was not taking any narcotic drugs and seemed lucid. After Brasmer's death, Haas filed an amended complaint, adding state-law wrongful death claims, and, following the close of discovery, all defendants moved for summary judgment.

Pertinent to this appeal, the District Court granted GE's motion,[3] ruling that, "[i]n order for a jury to find that [Brasmer's] injury was caused by … GE … [the jury] would have to infer that the dust in the engine compartment was from gaskets or seals that contained asbestos, which were also manufactured or supplied by GE." (App. at 29.) According to the District Court, "[t]his inferential connection … is too tenuous to defeat summary judgment." (App. at 29.) In reaching its ruling, the District Court relied upon Brasmer's deposition testimony, despite its being hearsay, determining that it was admissible because GE was present at the deposition and GE's interests were adequately represented by Boeing, which had the lead role in questioning Brasmer. In the alternative, the Court decided the testimony could also be admissible under the residual exception to the bar against hearsay.

---

[3] Seven of the eight defendants successfully moved for summary judgment. The eighth defendant was dismissed pursuant to a stipulation between the parties. Haas has appealed only the District Court's order granting summary judgment in favor of GE.

## II. Discussion[4]

### A. Summary Judgment[5]

In order to defeat summary judgment in an asbestos case, New Jersey law provides that a plaintiff must adduce evidence from which "reasonable jurors could infer that sometime during [his] work histor[y] ... plaintiff[] w[as] exposed to a defendant's friable asbestos frequently and on a regular basis, while [plaintiff was] in close proximity to it[,]" as well as "competent evidence, usually supplied by expert proof, establish[ing] a nexus between the exposure and plaintiff's condition."[6] *Sholtis v. Am. Cyanamid Co.*, 568 A.2d 1196, 1208 (N.J. Super. Ct. App. Div. 1989). In mesothelioma cases, however, the amount of exposure necessary to demonstrate liability is somewhat lower because "mesothelioma is associated with the smallest exposure to asbestos and can develop from the cumulative effects of minimal and infrequent exposure." *Buttitta v. Allied Signal, Inc.*, No. A-5263-07T1, 2010 WL 1427273, at *10 (N.J. Super. Ct. App. Div. Apr. 5,

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1441. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[5] We review a district court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (internal quotation marks omitted). Summary judgment is appropriate if we are satisfied that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Although the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in h[er] favor in determining whether a genuine factual question exists, summary judgment should not be denied unless there is sufficient evidence for a jury to reasonably find for the nonmovant." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) (internal quotation marks and citation omitted).

[6] There is no dispute that New Jersey law controls.

7

2010) (per curiam) (internal quotation marks omitted); *accord Kurak v. A.P. Green Refractories Co.*, 689 A.2d 757, 760, 766 (N.J. 1997).[7] A plaintiff may "rely upon circumstantial proof of sufficiently intense exposure," generally accompanied by expert proof, to warrant the imposition of liability because "proof of direct contact is almost always lacking." *James v. Bessemer Processing Co.*, 714 A.2d 898, 910 (N.J. 1998) (internal quotation marks omitted); *accord Goss v. Am. Cyanamid, Co.*, 650 A.2d 1001, 1005 (N.J. Super. Ct. App. Div. 1994) (stating that a plaintiff need not adduce direct evidence of asbestos exposure).

Here, taking all inferences in Haas's favor and viewing the evidence in the light most favorable to her, there is sufficient evidence for a reasonable factfinder to conclude that her father was exposed to asbestos from GE's J79 Engine and that the exposure caused his mesothelioma. Brasmer testified that, as part of his routine responsibilities, he worked on the J79 Engine, which required him to come into contact with many seals and gaskets. Davis, GE's own corporate representative, admitted that the J79 Engine's 147 seals and gaskets contained asbestos and that the asbestos "frayed" over time. (App. at 125.) Haas's expert, Thomson, explained that, due to the "extreme temperatures, noise,

---

[7] *See also, e.g.*, *Barnes v. Foster Wheeler Corp.*, No. CIV.A. 13-1285 JBS/JS, 2014 WL 2965699, at *3 (D.N.J. June 30, 2014) ("In *Kurak*, the court recognized a lower causation standard … where plaintiff has been diagnosed with mesothelioma. The court stated that, unlike asbestosis or cancer of the lung caused by asbestos, mesothelioma, a cancer of the lining of the lung, can be caused by relatively small exposures to asbestos." (internal quotation marks and citations omitted)); *Thomasson v. Air & Liquid Sys. Corp.*, No. CIV.A. 13-1034 JBS/JS, 2015 WL 1639730, at *3 (D.N.J. Apr. 9, 2015) ("[A] lower causation standard may apply in cases where plaintiff has been diagnosed with mesothelioma.").

and vibration experienced within the engine compartment, the normal and intended operation of the aircraft caused the asbestos-components to deteriorate, crumble, flake, and contaminate the entire engine compartment." (App. at 544.) Taken together, this evidence is sufficient to defeat summary judgment.[8] That the seals and gaskets could have been replaced with non-GE parts and that Brasmer lacked personal knowledge of whether a particular substance he encountered was actually asbestos does not change that result. *Sholtis*, 568 A.2d at 1206-07; *Kurak*, 689 A.2d at 760. Accordingly, the District Court's grant of summary judgment cannot be sustained.

## B.     Admissibility of Brasmer Deposition[9]

GE argues that the District Court erred in admitting Brasmer's deposition testimony because it constituted hearsay and that excluding the deposition would provide

---

[8] The District Court's recitation of the facts incorrectly described certain evidence. In particular, the Court's reliance upon the testimony of Frederick Deaver, who worked alongside Brasmer in Thailand, was largely misplaced. Deaver testified that he and Brasmer were both crew chiefs and that they did not usually work together. His testimony was that he rarely observed what Brasmer did while working on the F-4E. Indeed, Deaver said that he only interacted with Brasmer on two occasions at work. The bulk of his testimony related to the F-4E's brakes. Deaver did note, however, that the planes and their engine components were very dusty and dirty, though he did not list asbestos as a potential source of that dust.

[9] We review a district court's evidentiary rulings for an abuse of discretion. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 111 (3d Cir. 2001). This issue is properly before us, even though GE did not file a cross appeal. *See United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924) ("[I]t is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court... ."); *United States v. Ritter*, 416 F.3d 256, 262 n.6 (3d Cir. 2005) ("It is well established that the prevailing party below need not cross-appeal to entitle him to support the judgment in his favor on grounds expressly rejected by the court below." (internal quotation marks omitted)).

an alternative basis for affirming the District Court's ruling. The District Court ruled that Brasmer's deposition testimony was admissible under Federal Rule of Evidence 804(b)(1), which provides an exception to the hearsay rule for former testimony when: (1) the declarant is unavailable; (2) the testimony was given during trial, a hearing, or a deposition; and (3) the testimony is being offered against a party who had, or, in a civil case, whose predecessor in interest had, an opportunity and similar motive to develop it by direct, cross-, or redirect examination. Here, GE argues that, because it did not have an opportunity to cross-examine Brasmer, the admission of his testimony was inappropriate because the third requirement of Rule 804(b)(1) was not satisfied. We disagree.

The similar-motive requirement assures that "the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do … if the witness were available to be examined by that party." *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 166 (3d Cir. 1995) (internal quotation marks omitted). "Similar motive" does not mean identical motive, and whether there was a similar motive is an inherently factual inquiry. *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). Here, the co-defendants evidently agreed to allow Boeing's attorney to be the lead questioner during Brasmer's deposition. Even then, GE's attorney participated in the deposition and had the opportunity to object or interfere if it was deemed necessary. *Haas v. 3M Co.*, No. CIV.A. 12-2944 FLW, 2014 WL 3696043, at *9 (D.N.J. July 24, 2014). Further, Boeing's attorney was able to successfully elicit the information involving the GE-manufactured J79 Engines that provided the basis for GE's summary

10

judgment motion. And Boeing avoided liability by admitting that its parts contained asbestos and raising the "government contractor defense,"[10] not by showing some hostility to GE's interests. Boeing did not endeavor to show that GE manufactured the asbestos-containing parts that caused Brasmer's mesothelioma. *Id.* at *7. Given those circumstances and this particular record, we cannot say that the District Court abused its discretion in ruling that GE's interests were sufficiently similar to Boeing's interests to permit consideration of Brasmer's deposition testimony under Rule 804(b)(1).[11]

## III. Conclusion

For the foregoing reasons we will vacate the ruling of the District Court and remand the case for further proceedings consistent with this opinion.

---

[10] That defense insulates a private government contractor from a state-law products liability claim "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

[11] Because we conclude that the District Court did not abuse its discretion in admitting the testimony under Rule 804(b)(1), we need not reach the question of whether the testimony is alternatively admissible under Rule 807.